Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE**
333 H Street, Suite 5059
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | Case No.: 1:10-CV-00907-LJO-JLT |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS DAVID ALVARADO AND LINDA ALVARADO, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; DECLARATIONS OF DAVID ALVARADO, LINDA ALVARADO, VICTOR GONZALEZ, ARMANDO GONZALEZ, BRANDIE FLORES AND ATTORNEY MATTHEW PARE WITH EXHIBITS ATTACHED THERETO, FILED CONCURRENTLY; STATEMENT OF UNCONTROVERTED FACTS** |
| vs. | |
| DAVID ALVARADO, LINDA ALVARADO, ADOLFO ORDAZ, JR., SUSANA GARCIA AND ANDRES GARCIA, individually and d/b/a FANKIE'S BAR a/k/a PATRON'S SPORTS BAR, | |
| Defendants. | |
| | *[Pursuant to Federal Rules of Civil Procedure, Rule 56]* |
| | Date: Monday, May 16, 2011 |
| | Time: 8:30 a.m. |
| | Judge: Honorable Lawrence J. O'Neill |
| | Courtroom: 4 |

11
12
13
14
15
16
17
18
19
20
21
22
23
24

25 TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

26 PLEASE TAKE NOTICE that on Monday, May 16, 2011, at 8:30 a.m., or as soon

27 thereafter as this matter may be heard by the above-entitled United States District Court, located at

1   2500 Tulare Street, Fresno, CA 93721 defendants David Alvarado and Linda Alvrado will present

2   their motion for summary judgment in their favor, or in the alternative summary adjudication.

3   Defendants David Alvrado and Linda Alvrado are requesting that the plaintiff take nothing from

4   them in this case, that they be dismissed on the merits, and they recover their costs. In the

5   alternative, defendants are requesting summary adjudication in their favor as to plaintiff's

6   following claims for relief: Count 1 – violation of 47 U.S.C. §605, Count 2 – violation of 47

7   U.S.C. §553, Count 3 – conversion, and Count 4 – violation of California Business and Professions

8   Code §17200, et seq.

9           This motion is being made pursuant to Federal Rules of Civil Procedure, Rule 56. This

10  motion is brought on the grounds that there is no legal or factual basis for the individual liability of

11  David Alvarado and Linda Alvarado in this matter. The motion is based on this Notice of Motion

12  and Motion, the Memorandum of Points and Authorities filed herewith, the declarations of David

13  Alvarado, Linda Alvarado, Victor Gonzalez, Armando Gonzalez, Brandie Flores, and attorney

14  Matthew Paré and the exhibits attached thereto, filed concurrently, and upon such other matters as

15  may be presented to the Court at the time of the hearing.

16  DATED: April 11, 2011                          LAW OFFICE OF MATTHEW PARE

17

18                                                  By:     /s/ Matthew A. Paré

19                                                          Matthew A. Paré, Esquire
                                                            Counsel for Defendants David
20                                                          Alvarado and Linda Alvarado

21

22

23

24

25

26

27

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION AND FACTUAL BACKGROUND

4    This case stems from the alleged exhibition of a television program, specifically Ultimate

5 Fighting Championship 98: Rashad Evans v. Lyoto Machida, on May 23, 2009, at the bar located

6 at 224 E. Yosemite Avenue, Madera, CA 93638. The plaintiff in this action, Joe Hand Promotions,

7 Inc. has the exclusive rights to the subject television program, and defendants did not pay Joe Hand

8 Promotions, Inc. for the rights to show the subject television program.

9    At the time of the events giving rise to this lawsuit the subject premises were not in the

10 control of defendants David Alvarado and Linda Alvarado. Defendants David Alvarado and Linda

11 Alvrado were previously and subsequently the owners of the bar located at 224 E. Yosemite

12 Avenue, Madera, California 93638, known as Frankie's Bar. They owned and operated that bar in

13 the time period before April of 2009, and then again starting towards the end of 2009. From

14 approximately April 1, 2009 through November 2009, the subject premises was being leased to

15 Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia, who were running their own business known

16 as Patron's Sports Bar. During that time in question, Adolfo Ordaz, Jr., Susana Garcia, and Andres

17 Garcia were exclusively in control of the subject premises and assumed all responsibilities for the

18 actions that took place therein. At that time the establishment was known as Patron's Sports Bar

19 and the business of David Alvrado and Linda Alvarado, Frankie's Bar, did not exist.

20    After Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia failed to pay rent for multiple

21 months, defendants David Alvarado and Linda Alvarado resumed control of the subject premises,

22 once again operating it as Frankie's Bar. David Alvarado and Linda Alvarado did not regain

23 control over the establishment until well after the events giving rise to this underlying lawsuit.

24 During the time of the alleged events giving rise to this lawsuit, specifically in May of 2009,

25 Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were exclusively in control of the subject

26 premises.

27  / / /

1        If any television programs were shown at the subject location during the time that Adolfo

2   Ordaz, Jr., Susana Garcia, and Andres Garcia were operating the business as Patron's Sports Bar,

3   that was done completely independently of David Alvarado and Linda Alvarado, and was not with

4   their permission or even knowledge. As it relates specifically to the alleged May 23, 2009

5   program, if that was exhibited as alleged, it was done by Adolfo Ordaz, Jr., Susana Garcia, and

6   Andres Garcia, and without David Alvarado and Linda Alvarado's knowledge, consent, or

7   permission. Quite simply, moving defendants were not in any way involved with what was taking

8   place at 224 E. Yosemite Avenue, Madera, California 93638 on May 23, 2009 whatsoever. On or

9   about May 23, 2009, David Alvarado and Linda Alvarado were not informed of what was taking

10  place at Patron's Sports Bar. They had no employees working at the subject premises, and were

11  not the owners of the business at that time.

12       With regard to the subject television program that was allegedly displayed unlawfully on

13  May 23, 2009, which forms the basis of this lawsuit, David Alvarado and Linda Alvarado had no

14  prior knowledge that was going to be displayed on the television there, nor did they have any

15  control over what was exhibited on the televisions at Patron's Sports Bar, nor did they derive any

16  benefit from the program being displayed. They had no stake in the business of Patron's Sports

17  Bar whatsoever. David Alvarado and Linda Alvarado did not hold any supervisory position with

18  any control in the business of Patron's Sports Bar (or any position whatsoever for that matter) or

19  any financial stake in the business at all. They did not play any part in any violations of law that

20  may have occurred arising out of a television program that was allegedly displayed and forms the

21  basis of this lawsuit. David Alvarado and Linda Alvarado did not authorize any violations that

22  may have occurred, they did not have any right or ability to supervise what was going on at

23  Patron's Sports Bar, and had no financial interest in any misconduct that occurred.

24       Based upon their complete lack of involvement with any alleged violations, defendants

25  David Alvarado and Linda Alvarado should be dismissed from this lawsuit. In addition to the

26  sworn testimony of defendants David Alvarado and Linda Alvarado themselves, this motion is

27  also supported by the testimony of Victor Gonzalez, Armando Gonzalez, and Brandie Flores, all

1   employees at the subject location.  Moving defendants are also submitting herewith documentary

2   evidence proving that at the time of the events giving rise to this lawsuit Adolfo Ordaz, Jr., Susana

3   Garcia, and Andres Garcia were in exclusive control of the subject premises.

4         In the alternative, if this Honorable Court is not inclined to dismiss defendants David

5   Alvarado and Linda Alvarado from the lawsuit entirely, moving defendants request summary

6   adjudication as to plaintiff Joe Hand Promotions, Inc.'s individual claims in the operative

7   complaint for Count 1 – violation of 47 U.S.C. §605, Count 2 – violation of 47 U.S.C. §553,

8   Count 3 – conversion, and Count 4 – violation of California Business and Professions Code

9   §17200, et seq.  For the reasons outlined herein *infra*, plaintiff has no supporting evidence that

10  would provide the basis for any of these claims and thus summary adjudication is appropriate as to

11  each of those individual claims.

12                                        II.

13              **THE STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

14        Federal Rules of Civil Procedure, Rule 56 provides in pertinent part as follows:

15        A party may move for summary judgment, identifying each claim or defense – or the part of
16        each claim or defense--on which summary judgment is sought.  The court shall grant
          summary judgment if the movant shows that there is no genuine dispute as to any material
17        fact and the movant is entitled to judgment as a matter of law.

18                                        III.

19                                    **ARGUMENT**

20  1.    **Defendants David Alvarado and Linda Alvarado Are Entitled to Summary Judgment**

21        **in Their Favor**

22        A.    **Defendants David Alvarado and Linda Alvarado Cannot Be Individually**

23              **Liable in this Case Whatsoever, Given Their Complete Lack of Personal**

24              **Involvement and the Applicable Legal Standards in Television Signal Piracy**

25              **Cases**

26        In the case of *J & J Sports Productions, Inc. v. Kevin Daley* (2007) U.S. Dist. LEXIS

27  49839 at *10 the United States District Court for the Eastern District of New York did not hold the

1    defendant (Daley) liable in his individual capacity (as opposed to the business entity Kev's) in a

2    television signal piracy case and cautioned that "J&J should in the future take care not to sue

3    individuals without any reasonable basis for so doing." The standard and applicable rules that the

4    Court articulated in that case were as follows:

5

6    There is no evidence that Daley had any knowledge that the Event would be exhibited at
     Kev's, that he had any control over what was being displayed on its television when Larkin
7    visited, or that he derived any benefit from the fact that the Event was displayed. Nor does
     logic support the inference that Daley as an "officer, director, shareholder and/or principal"
8    of Kev's had the kind of control J&J asserts. . . . there is nothing in the record to
     demonstrate which of those various positions, if any, Daley actually held. As a result, there
9    is no basis to assume that Daley enjoyed supervisory control (a shareholder or director
     might not have such authority), or that he had a financial stake in the business (an officer or
10   director might not have such an interest). In short, there is nothing other than speculation to
     support the conclusion that Daley played any part in the violations of the FCA committed
11   by Kev's, and even less to support the conclusion that any role he did play would warrant
     imposing individual liability.
12

13   In another television signal piracy case, *J & J Sports Productions, Inc. v. 291 Bar &*

14   *Lounge, LLC* (E.D.N.Y. 2009) 648 F.Supp.2d 469, 473, the court again found that individual

15   liability on the part of the defendant was not appropriate. The Court stated in part as follows:

16

17   J&J asserts liability against both the corporate defendant and Dennis Caba, individually,
     who is alleged to be the owner of 291 Bar. See Complaint. P 6. This, however, constitutes
18   the [*6] entire extent of the allegations against Mr. Caba individually. Individual liability
     under the Cable Act requires that the individual authorize the underlying violations. See
19   J&J Sports Productions, Inc. v. Benson, No. 06-CV-1119, 2007 U.S. Dist. LEXIS 21779,
     2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007). Put differently, the complaint must
20   establish that the individual had a "right and ability to supervise" the violations, as well as
     an obvious and direct financial interest in the misconduct. Softel, Inc., v. Dragon Medical
21   and Scientific Communications, Inc., 118 F.3d 955, 971 (2d Cir. 1997). The complaint
     here makes no such allegations. In such circumstances, it would not be appropriate to hold
22   an individual jointly and severally liable along with the business entity. See generally J&J
     Sports Productions v. Daley, No. 06-CV-238, 2007 U.S. Dist. LEXIS 49839, (E.D.N.Y.
23   Feb. 15, 2007) (discussing and applying the legal bases for imposing individual liability in
     cable theft cases). In Daley, the plaintiff made even more extensive allegations of control
24   and supervision on the part of the individual owner than in the instant case, but the court
     nevertheless declined to extend individual liability to the defendant. Id. (declining to
25   impose individual [*7] liability in spite of conclusory allegations in complaint that
     individual had "supervisory control over the infringing activities");
26

27

1    The Court in *291 Bar & Lounge, LLC* went on to explain that the plaintiff in that case
2  made no allegation that defendant Mr. Caba was present for the violation, that he authorized or
3  controlled it, or that he reaped commercial profit from it. Similar to the court's opinion in *Kevin*
4  *Daley*, the court in *291 Bar & Lounge, LLC* again cautioned the plaintiff as follows: "To the extent
5  that J&J wishes to assert liability against an individual in the future, it should make adequately
6  detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership
7  of the offending entity." The court went on to state that quite simply that "[i]f the plaintiff wishes
8  to assert liability against an individual, it must adduce an adequate basis for doing so."

9    While there are some television signal piracy cases that have declined to dismiss individual
10 defendants on a Fed. R. Civ. P. 12(b)(6) motion, that is because it is conceivable that the facts
11 might be developed to support a finding that a director could be personally liable. As such, if a
12 case is merely in the pleading stage, that is premature to dismiss an individual defendant. In this
13 present case, however, we are well past the pleading stage (and in fact discovery is now complete),
14 and on a motion for summary judgment the evidence must be considered, not merely the plaintiff's
15 allegations.

16    Given the above authorities from *Kevin Daley* and *291 Bar & Lounge, LLC*, and other
17 signal piracy cases, the necessary elements in order to hold an individual personally liable in a
18 television signal piracy case are as follows:

19    (1)    The individual defendant must have had control over the television at the time that
20         the alleged signal piracy occurred.

21    (2)    The individual defendant authorized the violation; and

22    (3)    The individual defendant must have derived some benefit from the alleged signal
23         piracy, specifically and obvious and direct financial gain from the violation.

24    Here, in this case, there is absolutely no evidence whatsoever to support a finding of any of
25 the three required elements to hold defendants David Alvarado and Linda Alvarado individually
26 liable, let alone all three elements. See the declaration of David Alvarado, Linda Alvarado, Victor
27 Gonzalez, Armando Gonzalez, Brandie Flores, and attorney Matthew Paré and the exhibits thereto,

1    filed concurrently.

2        Defendants David Alvarado and Linda Alvarado were not in control of the television at the
3    subject bar at the time of the alleged incident, as they had nothing to do with the business there at
4    that time. (See their declarations.) They had no knowledge or control of what was taking place
5    there. There is no evidence of David Alvarado and Linda Alvarado's personal involvement or
6    even presence at the bar when the alleged piracy took place. It is also true that there is no evidence
7    that defendants David Alvarado and Linda Alvarado authorized the alleged violation. Their
8    declarations that are being provided concurrently herewith indicate to the contrary, namely that
9    they did not authorize any violation whatsoever. David Alvarado and Linda Alvarado also
10   indicate in their declarations that they did not derive any benefit from the violation. Plaintiff has
11   no evidence to the contrary. Therefore, there is no basis to hold defendants David Alvarado and
12   Linda Alvarado individually liable.

13       In conclusion, for all of these reasons, defendants David Alvarado and Linda Alvarado
14   must be dismissed from this case on summary judgment. There is no genuine issue as to material
15   fact that would demonstrate how the plaintiff could have a viable claim against them individually.

16       **B.    Defendants David Alvarado and Linda Alvarado Are Entitled to Summary**
17       **Judgment in Their Favor Because Being Named on the Liquor License Alone**
18       **Is Insufficient to be Found Liable for Television Signal Piracy**

19       In another television signal piracy case where plaintiff Joe Hand Promotions, Inc. obtained
20   a default against a defendant whose name appeared on the liquor license, the court set aside the
21   entry of default, and expressed its concerns as follows:

22       The court is concerned about the draconian result emerging from haphazard practice in this
23       case. It appears that the only basis upon which Joe Hand premises a claim against O'Shea
         is the fact that a liquor license remained in O'Shea's name for some period of time after he
24       sold the bar. *Joe Hand Promotions, Inc. vs. Tip Off, Inc.* (2010) U.S. Dist. LEXIS 15686.

25       The only possible conclusion to draw from the case of *Joe Hand Promotions, Inc. v. Tip*
26   *Off, Inc.* is that being named on the liquor license of a bar that is accused of illegally showing a
27   pay-per-view program is not by itself sufficient to result in individual liability against the named

1  individual. Such a rule makes sense because otherwise individuals would be found liable for
2  potential activities that they simply had nothing to do with.

3        While there is some general authority that stands for the general idea that owners of liquor
4  licenses do have duties to oversee the activities in their establishment, (see e.g., *Alcoholic*
5  *Beverage Control Appeals Bd. Of Cal.* (1962) 197 Cal.App.2d 172, 180; *Murro v. Alcohol*
6  *Beverage Appeals Board* (1960) 181 Cal.App.2d 162), that responsibility does not extend to
7  monitor and be responsible for the activities of people that are not employees or agents of the
8  licensee after the business is sold. In short, defendants Adolfo Ordaz, Jr., Susana Garcia, and
9  Andres Garcia were not the employees or agents of defendants David Alvarado and Linda
10  Alvarado and thus David Alvarado and Linda Alvarado can not be responsible for their actions.
11  Furthermore, there may be a general rule about the responsibility of holders of liquor licenses, but
12  the more specific rule should govern from the case of *Joe Hand Promotions, Inc. vs. Tip Off, Inc.*
13  which essentially states that in the context of a television signal piracy lawsuit the name on the
14  liquor license itself is insufficient to establish liability.

15        In this case, plaintiff Joe Hand Promotions, Inc.'s only argument that moving defendants
16  David Alvarado and Linda Alvarado should be liable is that their names continued to appear on the
17  liquor license after the business was sold to Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia
18  and being operated as Patron's Sports Bar. That is insufficient, however, to pin liability on the
19  part of defendants David Alvarado and Linda Alvarado because they were not involved with what
20  was taking place at the bar at that time whatsoever. Therefore, defendants David Alvarado and
21  Linda Alvarado are entitled to summary judgment in their favor.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///

1    2.    **Defendants David Alvarado and Linda Alvarado Are Entitled to Summary**

2          **Adjudication in Their Favor as to Each Count Alleged by Plaintiff**

3          A.    **Defendants David Alvarado and Linda Alvarado Are Entitled to Summary**

4                **Adjudication In Their Favor as to Plaintiff's Claim for Violation of 47 U.S.C.**

5                **§605 Because There is No Evidence of Satellite Television Signal Piracy**

6                **Specifically**

7          It is well established that a defendant violates 47 U.S.C §553 if he intercepts a cable signal,

8    and he violates 47 U.S.C. §605 if he intercepts a satellite broadcast. See e.g., *J & J Sports*

9    *Productions, Inc. v. Man Thi Doan* (N.D. Cal. 2008) WL 4911223; *J & J Sports Productions, Inc.*

10   *v. Steve Sang Ro* (2010) U.S. Dist. LEXIS 21425, citing *J & J Sports Productions, Inc. v. Manzano*

11   (2008) U.S. Dist. LEXIS 84931, which states that "a signal pirate violates section 553 if he

12   intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he

13   cannot violate both by a single act of interception."; See also a couple of Joe Hand Promotions,

14   Inc.'s Southern District of California cases that have articulated that rule, Case No. 3:09-cv-00283-

15   MMA-RBB; Case No. 3:09-cv-798-MMA (NLS).

16         In the case of *J & J Sports Productions, Inc. v. Steve Sang Ro* (2010) U.S. Dist. LEXIS

17   21425, the court analyzed plaintiff's request for default judgment in a case with essential facts very

18   similar to the present case. The plaintiff (also represented by Thomas Riley), did not have any

19   evidence that the interception was of a satellite signal, but requested damages under Section 605.

20   The court declined to undertake that analysis because the private investigator could have observed

21   the means of interception with better investigation, and for that matter a third-party subpoena or

22   order for inspection could have been conducted to determine the means of interception. Without

23   any evidence or reason to believe that the interception was of a satellite signal, however, it was not

24   appropriate to award damages under Section 605. Particularly because the available damages are

25   greater under Section 605 compared to Section 553, it would not be appropriate to conclude that

26   Section 605 applies without any evidence supporting that.

27   / / /

1         In this case, there is simply no evidence which indicates that there was an interception of a

2 satellite signal by defendants. Even if plaintiff's allegations and plaintiff's evidence are assumed

3 to be completely true, there is no evidence indicating the means by which defendants allegedly

4 obtained this signal. The affidavit of the private investigator that plaintiff submitted simply says

5 nothing about the means of interception, and in written discovery plaintiff has produced nothing

6 indicating that a satellite signal was stolen specifically. Given this lack of evidence, plaintiff

7 cannot prevail on that claim as a matter of law. At best the evidence indicates that the television

8 program was shown, but there is nothing to suggest that it was obtained by illegally obtaining a

9 satellite signal. Therefore, this Court should summarily adjudicate plaintiff's claim against

10 defendants David Alvarado and Linda Alvarado for violation of 47 U.S.C. §605, in favor of

11 defendants.

12      **B.**     **Defendants David Alvarado and Linda Alvarado Are Entitled to Summary**

13             **Adjudication In Their Favor as to Plaintiff's Claim for Violation of 47 U.S.C.**

14             **§553 Because There is No Evidence of Cable Television Signal Piracy**

15             **Specifically**

16         Similar to the argument set forth in section B *supra,* plaintiff has no evidence whatsoever

17 regarding the means by which defendants allegedly intercepted the signal, and therefore defendants

18 are entitled to summary adjudication as to the count for violation of 47 U.S.C. §553. Again, this

19 section pertains to cable signal piracy specifically, and without any evidence of cable signal piracy

20 moving defendants David Alvarado and Linda Alvarado are entitled to summary adjudication in

21 their favor.

22      **C.**     **Defendants David Alvarado and Linda Alvarado Are Entitled to Summary**

23             **Adjudication In Their Favor as to Plaintiff's Claim for Conversion**

24         Plaintiff's complaint seeks damages for conversion, which is presumably the amount that

25 defendants would have been required to pay had they ordered the subject fight program from

26 plaintiff. California law indicates, however, that an interest in intangible personal property such as

27 an exclusive license to distribute a broadcast signal is not the proper subject of a claim of

1  conversion. Furthermore, there is no evidence in support of plaintiff's claim for conversion and
2  thus for both of these reasons moving defendants are entitled to summary adjudication as to this
3  claim.

4      *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1565 stated "Courts have
5  traditionally refused to recognize as conversion the unauthorized taking of intangible interests that
6  are not merged with, or reflected in, something tangible. (*Adkins v. Model Laundry Co.* (1928) 92
7  Cal.App. 575, 583 [business goodwill]; *Olschewski v. Hudson* (1927) 87 Cal.App. 282, 286–288
8  [competitor's customer route]; *Faircloth v. A.L. Williams & Associates* (1992) 206 Ga.App. 764
9  [unpaid commissions not evidenced by a receipt or certificate]; *Matzan v. Eastman Kodak Co.*
10  (1987) 134 A.D.2d 863 [no protected interest in an idea].) And Dean Prosser has cautioned
11  against scuttling conversion's tangibility requirement altogether, recommending instead the use of
12  other remedies to protect intangible interests. (Prosser & Keeton on Torts [(5th ed. 1984)] § 15, p.
13  92.)" *Thrifty-Tel* involved unauthorized use of the plaintiff's access and authorization codes to
14  make long distance telephone calls. The jury found the defendants liable for conversion. The
15  Court of Appeal concluded that the evidence supported the verdict based on a theory of trespass to
16  personal property and declined to decide whether the evidence established liability for conversion.
17  (*Thrifty-Tel, Inc.* at pp. 1565–1566.)

18      Given the above authority, it does not seem that an intangible interest in personal property
19  such as an exclusive license to distribute a broadcast signal would be the proper subject of a claim
20  for conversion under California law. Therefore, as a matter of law this Court should summarily
21  adjudicate plaintiff's claim for conversion against defendants David Alvarado and Linda Alvarado
22  in defendants' favor.

23      Putting aside the issue of the tort of conversion's tangibility requirement, and even
24  assuming that the rights to broadcast a television program are the proper subject of conversion,
25  plaintiff cannot prevail on this claim. Defendants are entitled to summary adjudication as to
26  plaintiff's claim for conversion because plaintiff has no evidence in support of its claim for
27  conversion against defendants. The basic elements of the tort are (1) the plaintiff's ownership or

1   right to possession of personal property; (2) the defendant's disposition of the property in a manner

2   that is inconsistent with the plaintiff's property rights; and (3) resulting damages. *See e.g., Burlesci*

3   *v. Petersen* (1998) 68 Cal.App.4th 1062, 1066. In this case, as revealed through the written

4   discovery responses, plaintiff has no evidence in support of the claim that defendants David

5   Alvarado and Linda Alvarado are liable for the tort of conversion. At best plaintiff has evidence

6   that it is the owner of the subject television program, but there is no evidence suggesting that

7   defendants David Alvarado and Linda Alvarado engaged in a disposition of the property in any

8   form, nor is there any evidence of plaintiff's damages.

9        For all of these reasons outlined above, defendants are entitled to summary adjudication as

10  to plaintiff's claim for conversion.

11      **D.**     **Defendants David Alvarado and Linda Alvarado Are Entitled to Summary**

12             **Adjudication In Their Favor as to Plaintiff's Claim for Violation of California**

13             **Business & Professions Code §17200**

14        Pursuant to Section 17203, the only available remedy (other than an injunction) for a

15  Section 17200, et seq. claim is to "restore to any person in interest any money or property, real or

16  personal, which may have been acquired by means of such unfair competition." In other words,

17  under section 17200 a plaintiff may recover only restitution. See *Bronco Wine Company v. Frank*

18  *A. Logoluso Farms* (1989) 214 Cal.App.3d 699 (as cited in *Kingvision Pay-Per-View, Ltd. v.*

19  *Rivers* 2000 U.S. Dist. LEXIS 4338, p. 11.) Here, plaintiff has no evidence of any money

20  whatsoever that was acquired by defendants David Alvarado and Linda Alvarado by unfair

21  competition (nor any money received whatsoever), so there can be no recovery by the plaintiff

22  under that count. As such, moving defendants are entitled to summary adjudication in their favor

23  on this claim.

24        Also in conjunction with plaintiff's Section 17200 claim was a request for attorney's fees

25  pursuant to California Code of Civil Procedure §1021.5. However, it is clear that plaintiff does

26  not meet the requirements under that section to warrant an award of attorney's fees. In order to

27  justify an award of attorney's fees under that section, among other things there must be

1   enforcement of an important right affecting the public interest if and a significant benefit, whether

2   pecuniary or nonpecuniary, that has been conferred on the general public or a large class of

3   persons.  Here, it is obvious that the statutory requirements to justify an award of attorney's fees

4   under that section are not met by any stretch of the imagination.  As such, moving defendants

5   David Alvarado and Linda Alvarado are also entitled to summary adjudication specifically as to

6   plaintiff's claim for the recovery of attorney's fees pursuant to California Code of Civil Procedure

7   §1021.5.

8                                              **IV.**

9                                      **CONCLUSION**

10           For all of the reasons discussed above, this Court must grant summary judgment in favor of

11   defendant David Alvarado and Linda Alvarado.  In the alternative, summary adjudication is

12   requested as to each of plaintiff's individual claims against these defendants.

13           Respectfully submitted.

14   DATED: April 11, 2011                          LAW OFFICE OF MATTHEW PARE

15

16                                          By:     /s/ Matthew A. Paré

17                                                  Matthew A. Paré, Esquire
                                                    Counsel for Defendants David
18                                                  Alvarado and Linda Alvarad

19

20

21

22

23

24

25

26

27

28

### Declaration of David Alvarado

I, David Alvarado do hereby state and declare as follows:

1.       I am over the age of 18 and competent to testify as to the following facts which are of my own personal knowledge. I would testify to the following if asked to do so by any court of law. I understand that this declaration will be submitted to the United States District Court for the Eastern District of California regarding Case No. 1:10-cv-00907-LJO-JLT.

2.       My wife Linda Alvarado and I were the owners of the bar located at 224 E. Yosemite Avenue, Madera, California 93638, known as Frankie's Bar. We owned and operated that bar in the time period before April of 2009, and then again starting towards the end of 2009.

3.       From approximately April 1, 2009 through November 2009, the subject premises was being leased to Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia, who were running their own business known as Patron's Sports Bar. During that time in question, Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were exclusively in control of the subject premises and assumed all responsibilities for the actions that took place therein. At that time the establishment was known as Patron's Sports Bar and the business of my wife and I, Frankie's Bar, did not exist.

4.       After Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia failed to pay rent for multiple months, my wife and I resumed control of the subject premises, once again operating it as Frankie's Bar. We did not regain control over the establishment until well after the events giving rise to this underlying lawsuit. During the time of the alleged events giving rise to this lawsuit, specifically in May of 2009, Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were exclusively in control of the subject premises.

///

1

5.     If any television programs were shown at the subject location during the time that Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were operating the business as Patron's Sports Bar, that was done completely independently of my wife and I, and was not with my permission or even knowledge. As it relates specifically to the alleged May 23, 2009 program, if that was exhibited as alleged, it was done by Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia, and without my knowledge, consent, or permission. Quite simply, I was not in any way involved with what was taking place at 224 E. Yosemite Avenue, Madera, California 93638 on May 23, 2009 whatsoever.

6.     On or about May 23, 2009, I was not informed of what was taking place at Patron's Sports Bar. I had no employees working at the subject premises, and was not the owner of the business at that time.

7.     Well before the time period when Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were operating their business on the subject premises, I always operated a lawful cable television system at the establishment.

8.     With regard to the subject television program that was allegedly displayed unlawfully on May 23, 2009, which forms the basis of this lawsuit, I had no prior knowledge that was going to be displayed on the television there, nor did I have any control over what was exhibited on the televisions at Patron's Sports Bar, nor did I derive any benefit from the program being displayed. I had no stake in the business of Patron's Sports Bar whatsoever. I did not hold any supervisory position with any control in the business of Patron's Sports Bar (or any position whatsoever for that matter) or any financial stake in the business at all. I did not play any part in any violations of law that may have occurred arising out of a television program that was allegedly displayed and forms the basis of this lawsuit. I did not authorize any violations that may have occurred, I did not have any right or ability to supervise what was going on at Patron's Sports Bar, and had no financial interest in any misconduct that occurred.

///

2

9.      Based upon my complete lack of involvement with any alleged violations, I am requesting to be dismissed as a defendant from this lawsuit.

I declare, under the penalty of perjury, under the laws of the State of California, and the laws of the United States of America that the foregoing above is true and correct to my own personal knowledge on this ____8____ day of April, 2011, at ____MADERA____ California.

By: _____

David Alvarado
Declarant

3

### Declaration of Linda Alvarado

I, Linda Alvarado do hereby state and declare as follows:

1.      I am over the age of 18 and competent to testify as to the following facts which are of my own personal knowledge. I would testify to the following if asked to do so by any court of law. I understand that this declaration will be submitted to the United States District Court for the Eastern District of California regarding Case No. 1:10-cv-00907-LJO-JLT.

2.      My husband David Alvarado and I were the owners of the bar located at 224 E. Yosemite Avenue, Madera, California 93638, known as Frankie's Bar. We owned and operated that bar in the time period before April of 2009, and then again starting towards the end of 2009.

3.      From approximately April 1, 2009 through November 2009, the subject premises was being leased to Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia, who were running their own business known as Patron's Sports Bar. During that time in question, Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were exclusively in control of the subject premises and assumed all responsibilities for the actions that took place therein. At that time the establishment was known as Patron's Sports Bar and the business of my husband and I, Frankie's Bar, did not exist.

4.      After Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia failed to pay rent for multiple months, my husband and I resumed control of the subject premises, once again operating it as Frankie's Bar. We did not regain control over the establishment until well after the events giving rise to this underlying lawsuit. During the time of the alleged events giving rise to this lawsuit, specifically in May of 2009, Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were exclusively in control of the subject premises.

1

5. If any television programs were shown at the subject location during the time that Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were operating the business as Patron's Sports Bar, that was done completely independently of my husband and I, and was not with my permission or even knowledge. As it relates specifically to the alleged May 23, 2009 program, if that was exhibited as alleged, it was done by Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia, and without my knowledge, consent, or permission. Quite simply, I was not in any way involved with what was taking place at 224 E. Yosemite Avenue, Madera, California 93638 on May 23, 2009 whatsoever.

6. On or about May 23, 2009, I was not informed of what was taking place at Patron's Sports Bar. I had no employees working at the subject premises, and was not the owner of the business at that time.

7. Well before the time period when Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were operating their business on the subject premises, I always operated a lawful cable television system at the establishment.

8. With regard to the subject television program that was allegedly displayed unlawfully on May 23, 2009, which forms the basis of this lawsuit, I had no prior knowledge that was going to be displayed on the television there, nor did I have any control over what was exhibited on the televisions at Patron's Sports Bar, nor did I derive any benefit from the program being displayed. I had no stake in the business of Patron's Sports Bar whatsoever. I did not hold any supervisory position with any control in the business of Patron's Sports Bar (or any position whatsoever for that matter) or any financial stake in the business at all. I did not play any part in any violations of law that may have occurred arising out of a television program that was allegedly displayed and forms the basis of this lawsuit. I did not authorize any violations that may have occurred, I did not have any right or ability to supervise what was going on at Patron's Sports Bar, and had no financial interest in any misconduct that occurred.

///

2

9.    Based upon my complete lack of involvement with any alleged violations, I am requesting to be dismissed as a defendant from this lawsuit.

I declare, under the penalty of perjury, under the laws of the State of California, and the laws of the United States of America that the foregoing above is true and correct to my own personal knowledge on this ___8___ day of April, 2011, at _____MADERA_____ California.

By: _____

Linda Alvarado
Declarant

3

## Declaration of Victor Gonzalez

I, Victor Gonzalez do hereby state and declare as follows:

1.      I am over the age of 18 and competent to testify as to the following facts which are of my own personal knowledge. I would testify to the following if asked to do so by any court of law. I understand that this declaration will be submitted to the United States District Court for the Eastern District of California regarding Case No. 1:10-cv-00907-LJO-JLT.

2.      I have worked as a security guard for the bar located at 224 E. Yosemite Avenue, Madera, California 93638 from before April 2009 until the present.

3.      On April 1, 2009, Adolfo Ordaz, Jr. took over the bar that was formerly known as Frankie's Bar, and began running the business as Petron's Sports Bar. Specifically, on May 23, 2009, when Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida was shown at this location, David Alvarado and Linda Alvarado had nothing to do with the bar. I was working as a security guard for Adolfo Ordaz, Jr. at that time at Petron's Sports Bar, located at 224 E. Yosemite Avenue, Madera, California 93638. At that time, although it was primarily Adolfo Ordaz, Jr. that was running the day-to-day operations at the bar, on occasion Susana Garcia and Andres Garcia were there as well, who I also understood to be owners of the bar, along with Adolfo Ordaz, Jr. Adolfo Ordaz, Jr., however, was at the bar all of the time in and around that time period, from opening until closing, and he was in charge of what was going on there.

4.      In and around May of 2009, when I worked as a security guard at Petron's Sports Bar, located at 224 E. Yosemite Avenue, Madera, California 93638, I was being paid by Adolfo Ordaz, Jr. At that time I was not being paid by David Alvarado or Linda Alvarado. In fact, Adolfo Ordaz, Jr. specifically stated that he was the one in charge now and David Alvarado was

1

not supposed to know what was going on. Adolfo Ordaz, Jr. stated "don't tell David what's going on in this business. Don't talk to him about nothing. I'm the owner and David has nothing to do with it anymore."

5.    Based upon the statements that Adolfo Ordaz, Jr. made to me and the other workers at the bar, it was clear that in May of 2009 Adolfo Ordaz, Jr. was the owner of the bar and was intentionally running the establishment entirely independently of David Alvarado and Linda Alvarado. According to Adolfo Ordaz, Jr., David Alvarado and Linda Alvarado had nothing to do with the bar at that time whatsoever. Based upon the instructions that I received from Adolfo Ordaz, Jr., I never dealt with David Alvarado or Linda Alvarado at all during that time period around May of 2009. David Alvarado and Linda Alvarado were never informed about what was going on at the bar at that time, and they certainly had no control of what was taking place there.

6.    Prior to Adolfo Ordaz, Jr. and his business partners (Susana Garcia and Andres Garcia) taking over the bar from David and Linda Alvarado on April 1, 2009, David Alvarado had a lawful cable television system at the establishment. When Adolfo Ordaz, Jr. took over the bar he changed the television system to some kind of satellite system and also had a "black box." Adolfo Ordaz, Jr. specifically told me "don't tell nobody" about the black box that was routinely used by Adolfo Ordaz, Jr. to obtain various television programs, including sporting events.

7.    In and around May of 2009 when I was working at the bar for Adolfo Ordaz, Jr. he did not pay me in full or properly, as well as some other employees. Initially we were paid with checks but the checks bounced. I have brought this to the attention of the Labor Board, and believe that an action is being taken against Adolfo Ordaz, Jr. on my behalf for my earnings that

2

Adolfo Ordaz, Jr. did not pay.  Additionally, during that time period there were several women that worked at the bar for very short time periods because Adolfo Ordaz, Jr. was not paying them properly either.

I declare, under the penalty of perjury, under the laws of the State of California, that the foregoing above is true and correct to my own personal knowledge on this _3_ day of March, 2011, at _MABERS_ California.

By: _____
Victor Gonzalez
Declarant

3

### Declaration of Armando Gonzalez

I, Armando Gonzalez do hereby state and declare as follows:

1.       I am over the age of 18 and competent to testify as to the following facts which are of my own personal knowledge. I would testify to the following if asked to do so by any court of law. I understand that this declaration will be submitted to the United States District Court for the Eastern District of California regarding Case No. 1:10-cv-00907-LJO-JLT.

2.       I have worked as a security guard for the bar located at 224 E. Yosemite Avenue, Madera, California 93638 from before April 2009 until the present.

3.       On April 1, 2009, Adolfo Ordaz, Jr. took over the bar that was formerly known as Frankie's Bar, and began running the business as Petron's Sports Bar. Specifically, on May 23, 2009, when Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida was shown at this location, David Alvarado and Linda Alvarado had nothing to do with the bar. I was working as a security guard for Adolfo Ordaz, Jr. at that time at Petron's Sports Bar, located at 224 E. Yosemite Avenue, Madera, California 93638. At that time, although it was primarily Adolfo Ordaz, Jr. that was running the day-to-day operations at the bar, on occasion Susana Garcia and Andres Garcia were there as well, who I also understood to be owners of the bar, along with Adolfo Ordaz, Jr. Adolfo Ordaz, Jr., however, was at the bar all of the time in and around that time period.

4.       In and around May of 2009, when I worked as a security guard at Petron's Sports Bar, located at 224 E. Yosemite Avenue, Madera, California 93638, I was being paid by Adolfo Ordaz, Jr. At that time I was not being paid by David Alvarado or Linda Alvarado. In fact, Adolfo Ordaz, Jr. specifically stated that he was the one in charge now and David Alvarado was

1

not supposed to know what was going on. Adolfo Ordaz, Jr. also explicitly stated multiple times that "David had no say as to what happens at the bar, I'm the owner." To my recollection, he specifically stated that twice. He also said "David is not to be notified of anything that happens in this bar. This is my bar, and I'm the owner. I don't want you talking to David about what goes on in the bar. David is not supposed to be in the loop. If you have any questions you come to me, I'm the owner of the bar."

5.      Based upon the statements that Adolfo Ordaz, Jr. made to me and the other workers at the bar, it was clear that in May of 2009 Adolfo Ordaz, Jr. was the owner of the bar and was intentionally running the establishment entirely independently of David Alvarado and Linda Alvarado. According to Adolfo Ordaz, Jr., David Alvarado and Linda Alvarado had nothing to do with the bar at that time whatsoever. Based upon the instructions that I received from Adolfo Ordaz, Jr., I never dealt with David Alvarado or Linda Alvarado at all during that time period around May of 2009. David Alvarado and Linda Alvarado were never informed about what was going on at the bar at that time, and they certainly had no control of what was taking place there.

I declare, under the penalty of perjury, under the laws of the State of California, that the foregoing above is true and correct to my own personal knowledge on this **2 4** day of February, 2011, at **MADERA** California.

By: _____

Armando Gonzalez
Declarant

2

## Declaration of Brandie Flores

I, Brandie Flores do hereby state and declare as follows:

1.       I am over the age of 18 and competent to testify as to the following facts which are of my own personal knowledge. I would testify to the following if asked to do so by any court of law. I understand that this declaration will be submitted to the United States District Court for the Eastern District of California regarding Case No. 1:10-cv-00907-LJO-JLT.

2.       I worked as a bartender at the bar located at 224 E. Yosemite Avenue, Madera, California 93638. I worked there at Petron's Sports Bar for about three months starting in the springtime of 2009.

3.       When I started working there it was my understanding that the owner of the bar was Adolfo Ordaz, Jr. In fact, he introduced himself to me as the owner and the boss. The entire time that I worked at the bar Adolfo Ordaz, Jr. held himself out as the owner of the establishment. For example, I remember when one radio station came to the bar Adolfo Ordaz, Jr. introduced himself to the radio station as the owner. Adolfo Ordaz, Jr. actually very often referred to himself as the owner and made clear to all of the employees working there that he was in charge and we were supposed to report to him as the boss, along with a woman who Adolfo Ordaz, Jr. described as a co-owner of the bar with him. If ever there was an issue about what to do, those were the people the employees were supposed to talk to about it.

4.       During the entire three months that I worked at the bar, I do not believe that David Alvarado and Linda Alvarado were ever even in the bar, nor were they even mentioned for that matter. I actually had no knowledge about them being involved in the bar business there at any time whatsoever until months later.

1

5.      I do not believe I was specifically working on the day of May 23, 2009, when the UFC Fight Rashad Evans v. Lyoto Machida was shown. I do recall, however, that Adolfo Ordaz, Jr. was spreading the word about showing events such as that and generally holding different promotions in an attempt to increase the business at the bar. I am not aware of exactly how the television system was set up and working, but I do know that David Alvarado and Linda Alvarado had nothing to do with the operations of the televisions at the bar at that time. On May 23, 2009, the business was being run as Petron's Sports Bar, by Adolfo Ordaz, Jr., not Frankie's.

6.      Based upon the statements that Adolfo Ordaz, Jr. made to me and the other workers at the bar, it was clear that in May of 2009 Adolfo Ordaz, Jr. was the owner of the bar and was intentionally running the establishment entirely independently of David Alvarado and Linda Alvarado. To my knowledge, David Alvarado and Linda Alvarado were never informed about what was going on at the bar at that time, and they certainly had no control of what was taking place there.

7.      In and around May of 2009 when I was working at the bar for Adolfo Ordaz, Jr. he did not pay me in full or properly, as well as some other employees. Although I repeatedly insisted that Adolfo Ordaz, Jr. put me on payroll with the appropriate tax forms, for example, he never did that and eventually I quit primarily because of issues with the lack of pay.

I declare, under the penalty of perjury, under the laws of the State of California, and the law of the United States of America, that the foregoing above is true and correct to my own personal knowledge on this __31__ day of March, 2011, at __Madera__ California.

By: _____
Brandie Flores
Declarant

2

1      **DECLARATION OF ATTORNEY MATTHEW A. PARE**

2      I, Matthew A. Paré, hereby state and declare as follows:

3          1.      I am an attorney licensed to practice law before all state and federal courts in the

4      State of California. I represent defendants David Alvarado and Linda Alvarado in the above-

5      entitled action. I am personally familiar with all of the facts and circumstances as set forth in this

6      declaration, and could and would competently testify to the same if called upon to do so.

7          2.      Pursuant to this Court's scheduling order dated October 6, 2010, I hereby certify

8      that I have met and conferred with opposing counsel for plaintiff Joe Hand Promotions, Inc.,

9      Thomas P. Riley. Specifically, we spoke on the phone regarding this case multiple times, and I

10     sent a correspondence on January 26, 2011, outlining my clients position in this case regarding the

11     lack of liability. I have also explored the possibility of settlement with plaintiff, but such

12     discussions were unfruitful and thus the instant motion is necessary.

13         3.      The deadline in this matter for discovery was set by this Court's scheduling order

14     on October 6, 2010, as being April 4, 2011. The parties have engaged in written discovery,

15     although no depositions have been taken in this matter.

16         4.      By engaging in written discovery, on behalf of defendants David Alvarado and

17     Linda Alvarado, I have ascertained that plaintiff Joe Hand Promotions, Inc. has no inculpatory

18     evidence against defendants David Alvarado and Linda Alvarado to support liability against

19     moving defendants in this case. For example, in special interrogatories 3, 4, and 5 plaintiff was

20     asked for all documents, witnesses, and facts supporting the contention that defendant David

21     Alvarado was in control of the subject premises on May 23, 2009. In response, plaintiff just

22     provided a copy of the liquor license that listed David Alvarado and Linda Alvarado on it. Special

23     interrogatories 6, 7, and 8 asked for the same information regarding defendant Linda Alvarado and

24     the same responses were provided. As a matter of law, if the liquor license is the only evidence

25     that would be used to pin liability against defendants David Alvarado and Linda Alvarado, that is

26     insufficient. Special interrogatories 9, 10, and 11 were regarding evidence that defendant David

27     Alvarado knew the subject television program was going to be displayed, and plaintiff provided

1   nothing, merely indicating that the information was within the scope of knowledge of the

2   propounding party. Special interrogatories 12, 13, and 14 asked the same information with regard

3   to defendant Linda Alvarado and similarly plaintiff provided nothing. Special interrogatories 15-

4   20 all request information that would support the idea that defendants David Alvarado and Linda

5   Alvarado were in any way in charge of the premises at the time of the incident, and plaintiff

6   provided nothing more. Plaintiff's responses to special interrogatories 21 and 22 reveal that

7   plaintiff has no evidence that defendants David Alvarado and Linda Alvarado were physically

8   present at the premises during the alleged exhibition. Finally, in special interrogatory 25

9   defendants asked plaintiff for all facts that support the contention that David Alvarado and Linda

10   Alvarado had any involvement whatsoever in the decision to play the subject fight program and in

11   response plaintiff merely referred again to the liquor license, and the affidavit of the private

12   investigator, which said nothing about defendants David Alvarado and Linda Alvarado

13   specifically. Plaintiff's responses to defendants' special interrogatories are attached hereto as

14   Exhibit "A."

15      5.     Although most of plaintiff's responses to defendants' requests for admissions were

16   evasive, it is informative that in response to requests for admissions 20 and 21 plaintiff admitted

17   that the only basis in support of plaintiff's contention that David Alvarado and Linda Alvarado

18   were in charge and had control over the subject premises at the time in question is the liquor

19   license. Plaintiff's responses to defendants' requests for admissions are attached hereto as Exhibit

20   "B."

21      6.     In response to defendants' requests for production of documents, plaintiff produced

22   some documents indicating that defendants Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia

23   were in charge of the premises and the owners of the business at the time in question, not

24   defendants David Alvarado and Linda Alvarado. These documents were also produced in

25   discovery responses from defendants Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia

26   themselves. In particular, the documents consist of the following:

27   ///

1     7.     Attached hereto as Exhibit "C" is a letter from Adolfo Ordaz/Owner dated May 4,
2   2009, on Patron's Sports Bar letterhead, identifying the subject premises and confirming that he
3   was the owner at that time and the establishment was formerly known as Frankie's.

4     8.     Attached hereto as Exhibit "D" is the Fictitious Business Name Statement of
5   Patron's Sports Bar filed with the County of Madera, dated April 8, 2009, by Adolfo Ordaz, Jr.,
6   Susana Garcia, and Andres Garcia.

7     9.     Attached hereto as Exhibit "E" is a check written from an account at Wells Fargo
8   Bank from Susana Garcia d/b/a Patrons Sports Bar payroll account to Victor Gonzalez.

9     10.    Attached hereto as Exhibit "F" is the merchant card processing statement in the
10  name of Patrons Sports Bar and Susana Garcia.

11    11.    Attached hereto as Exhibit "G" is a contract between Q97FM and Patron's Sports
12  Bar.

13    12.    Attached hereto as Exhibit "H" is the Order, Decision or Award of the Labor
14  Commissioner in case No. 04-46979. In particular, this was regarding a claim by an employee of
15  Patrons Sports Bar, Yolanda Maria Varela. This document indicates, among other things, that at
16  the time of the subject incident giving rise to this lawsuit defendants Adolfo Ordaz, Jr., Susana
17  Garcia, and Andres Garcia were employing people at Patrons Sports Bar, at that location, not
18  defendants David Alvarado and Linda Alvarado. In page 4 under the legal analysis section it reads
19  in part as follows:

20        "[d]efendant by his own admission operated the business as an owner, filed a fictitious
21        business statement with the County of Madera to operate Patrons Sports Bar under a
22        general partnership, issued wages payments to plaintiff with a check from Patrons Sports
23        Bar, and attempted to procedure a small business loan for the business as a general
24        partnership doing business as Patrons Sports Bar."

25    13.    Plaintiff Joe Hand Promotions, Inc. in this case has not obtained or produced any
26  evidence of how the television signal piracy allegedly occurred in this case, namely whether a
27  satellite signal was obtained or a cable signal. Plaintiff has also not produced any evidence

1  regarding the involvement of defendants David Alvarado and Linda Alvarado in the alleged signal

2  piracy activities and conversion of the television signal.  Lastly, plaintiff Joe Hand Promotions,

3  Inc. has neither obtained or produced any evidence that defendants David Alvarado and Linda

4  Alvarado wrongfully obtained any money from the alleged television signal piracy that would

5  justify or provide any basis for an award of restitution.

6       Respectfully submitted,

7          I, Matthew A. Paré, hereby declare under penalty of perjury under the laws of the

8  State of California and the law of the United States of America that the foregoing is true and

9  correct to the best of my own personal knowledge on the 11th day of April 2011, in Chula Vista,

10  California.

11

12                  By:   /s/ Matthew A. Paré, Esquire

13                       Matthew A. Paré, Esquire
                           Declarant – Counsel for Defendants David

14                       Alvarado and Linda Alvarado

15

16

17

18

19

20

21

22

23

24

25

26

27

Exhibit A

Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel: 626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
JOE HAND PROMOTIONS, INC.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | Case No.: 1:10-cv-00907-LJO-JLT |
| Plaintiff, | PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES |
| v. | |
| DAVID ALVARADO, LINDA ALVARADO, ADOLFO ORDAZ, JR., SUSANA GARCIA AND ANDRES GARCIA, individually and d/b/a FANKIE'S BAR a/k/a PATRON'S SPORTS BAR, | |
| Defendants. | |

PROPOUNDING PARTY: Defendant DAVID ALVARADO

RESPONDING PARTY:   Plaintiff JOE HAND PROMOTIONS, INC.

SET NUMBER:   ONE (1)

Pursuant to the Federal Rules of Civil Procedure Rule 34, Plaintiff JOE HAND

PROMOTIONS, INC. ("Plaintiff") hereby responds to the Special Interrogatories of DAVID

ALVARADO ("Defendant").

///

PLAINTIFF'S RESPONSES TO DEFENDANT'S
SPECIAL INTERROGATORIES
CASE NO. 1:10-cv-00907-LJO-JLT

## INTRODUCTION

Plaintiff has not completed its discovery or preparation for the trial of this matter. Furthermore, Plaintiff has not completed its review and analysis of documents thus far gathered in the course of discovery.  Accordingly, these responses are made without prejudice to Plaintiff's right to present additional facts or contentions based upon information and documentation hereafter obtained or evaluated.

Plaintiff specifically reserves the right to supplement or amend these responses or present additional facts, contentions and documents at a later date, including the right to raise any applicable objections, in light of developments in the law or the underlying claims and any relevant information or documentation that Plaintiff subsequently may obtain.

Plaintiff has made a reasonable effort to respond to each interrogatory as it understands and interprets each said interrogatory.  If Defendant subsequently asserts a different interpretation, Plaintiff reserves the right to supplement its responses and/or objections.

## DEFINITIONS

1. The term "YOU" and "YOUR" refers to yourself personally and shall also include any and all officers, agents, attorneys, employees and or representatives of yourself individually and the business you operate and/or known and/or doing business as "Frankie's Bar a/k/a Patron's Sports Bar" located at 224 East Yosemite Avenue, Madera, California 93638.

2. The term "ESTABLISHMENT" refers to the business "Frankie's Bar a/k/a Patron's Sports Bar" located at 224 East Yosemite Avenue, Madera, California 93638.

3. The term "EVENT" refers to the *Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida*, on Saturday, May 23, 2009, as referenced in Plaintiff's Complaint.

///

///

///

# GENERAL OBJECTIONS

The following general objections apply to each and every response given herein, and are incorporated into Plaintiff's responses to each interrogatory as if set forth fully in each and every one of the following responses:

1.    Plaintiff objects to any instructions or directions in the interrogatories to the extent that they are contrary to the provisions of the Federal Rules of Civil Procedure Rule 33.  Plaintiff is not obligated to, and decline to, comply with any instructions or directions that conflict with said Rules to the extent that they purport to require any actions beyond or different from those set forth in Rule 33.

2.    Plaintiff objects to each and every interrogatory to the extent that it calls for the disclosure of information protected by the attorney-client privilege and/or the attorney work product doctrines and/or other applicable privilege or immunity; Plaintiff will not disclose such information.

3.    Plaintiff objects to each interrogatory to the extent that it calls for the disclosure of confidential information protected by the Plaintiff's right to privacy and right to maintain his confidential information.

4.    Plaintiff objects to the Definitions to the extent they impose upon Plaintiff a duty of disclosure or other obligation not required by the Federal Rules of Civil Procedure or Local Rules of the United States District Court for the Eastern District of California.

5.    Plaintiff objects to the definitions of "YOU" and "YOUR" as being overly broad, unduly burdensome, and vague and ambiguous and to the extent it intends to impose upon Plaintiff the duty to search for or identify documents in the possession of individuals or entities other than Plaintiff and/or seeks information protected by the attorney-client privilege and/or work product doctrine.

6.    In stating the above objections, Plaintiff does not waive, and hereby reserves, any and all of its rights and further objections, Plaintiff further responds as follows:

///

///

///

**DEFENDANT'S SPECIAL INTERROGATORY NO. 1:**

Identify by name, address, and phone number all witnesses that you believe were present at Patron's Sports Bar, located at 224 E. Yosemite Avenue, Madera, California 93638, at the time of the events giving rise to this subject lawsuit on Saturday, May 23, 2009, including patrons, employees of Patron's Sports Bar, and investigators.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 1:**

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

Without waiving the aforementioned, Plaintiff believes that in addition to the investigator that completed the sworn affidavit detailing the unlawful exhibition of Plaintiff's *Program* at the Defendant's commercial establishment, Plaintiff has reason to believe that employees of Defendant's establishment may well have knowledge of the allegations set forth within Plaintiff's Complaint in having witnessed the event being broadcast themselves, or learning about it secondhand from some other source. Plaintiff also believes that proprietors of neighboring establishments may well have knowledge of the allegations set forth within Plaintiff's Complaint, having personally witnessed the event themselves, or witnessed promotional efforts, advertising, or other preparations made in advance or anticipation of the unlawful exhibition of the subject *Program* taking place. Plaintiff has no other information and knows of no other witnesses responsive to this interrogatory at this time, however should such information or facts become made available to the Plaintiff, it will provide them to the Defendant by and through his counsel promptly.

1.      Joe Hand, Jr., President, Joe Hand Promotions, Inc.
        c/o Law Offices of Thomas P. Riley, P.C.
        First Library Square

1114 Fremont Avenue

South Pasadena, CA 91030

(Plaintiff)

2.   Thomas P. Riley, Esquire

Law Offices of Thomas P. Riley, P.C. (Attorneys for Plaintiff)

First Library Square

1114 Fremont Avenue

South Pasadena, CA 91030

(626) 799-9797

3.   David Alvarado-Defendant

224 E. Yosemite Avenue

Madera, CA 93638

4.   Linda Alvarado-Defendant

224 E. Yosemite Avenue

Madera, CA 93638

5.   Adolfo Ordaz, Jr.-Defendant

224 E. Yosemite Avenue

Madera, CA 93638

6.   Susana Garcia-Defendant

224 E. Yosemite Avenue

Madera, CA 93638

7.   Andres Garcia-Defendant

224 E. Yosemite Avenue

Madera, CA 93638

8.   All employees of David Alvarado who were working on the evening of May 2, 2009, and the morning of May 3, 2009.  (Defendant's counsel to provide name, address, and work telephone number of each person.)

9.   All employees of Linda Alvarado who were working on the evening of May 2, 2009, and the morning of May 3, 2009.  (Defendant's counsel to provide name, address, and work telephone number of each person.)

10.   All employees of Adolfo Ordaz, Jr. who were working on the evening of May 2, 2009, and the morning of May 3, 2009.  (Defendant's counsel to provide name, address, and work telephone number of each person.)

11.   All employees of Susana Garcia who were working on the evening of May 2, 2009, and the morning of May 3, 2009.  (Defendant's counsel to provide name, address, and work telephone number of each person.)

12.   All employees of Andres Garcia who were working on the evening of May 2, 2009, and the morning of May 3, 2009.  (Defendant's counsel to provide name, address, and work telephone number of each person.)

13.   All employees of Frankie's a/k/a Patron's Sports Bar who were working on the evening of May 23, 2009, and the morning of May 24, 2009.  (Defendant's counsel to provide name, address, and work telephone number of each person.)

14.   All patrons of Frankie's a/k/a Patron's Sports Bar who were in attendance on the evening of May 23, 2009, and the morning of May 24, 2009.  (Identity and address information to be supplied by the Defendant's counsel.)

15.   Defendant's accountants and/or bookkeepers, either on Defendant's staff, or employed by outside bookkeeping/accounting firms. (Defendant's counsel to provide name, address, and business telephone number of each person.)

16.   The custodian of records from the local cable and/or satellite programming provider servicing the Defendant's establishment on May 23, 2009.

17.   All inculpatory witnesses identified during discovery. (Identity and address information to be supplied to Defendants' counsel as made available.)

18.   Matt Brown (Investigator)
RED ROCK INVESTIGATIONS
P.O. Box 800982
Santa Clarita, CA 91380
661-993-1261

19.   Ted Norwood
RED ROCK INVESTIGATIONS
P.O. Box 800982
Santa Clarita, CA 91380
661-993-1261

20.   Owner and/or operator and/or occupant(s) of vehicle bearing license plate 5MTE545.

21.   Owner and/or operator and/or occupant(s) of vehicle bearing license plate 5CZA942.

22.   Owner and/or operator and/or occupant(s) of vehicle bearing license plate 5TYS229.

23.   Owner and/or operator and/or occupant(s) of vehicle bearing license plate 5UBJ946.

24. Owner and/or operator and/or occupant(s) of vehicle bearing license plate 7T89879.

25. Owner and/or operator and/or occupant(s) of vehicle bearing license plate 2ZEU443.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 2:

How many patrons of Patron's Sports Bar do you contend were present at the time of the alleged exhibition of the subject fight program (Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida, on Saturday, May 23, 2009) at Patron's Sports Bar?

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 2:

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

Upon review of the investigative report, Plaintiff informs the propounding party Defendant that the investigator makes note of witnessing headcounts of 25, 25, and 27 patrons present at Frankie's a/k/a Patron's Sports Bar on May 23, 2009, however, whether or not there were more or less patrons during the duration of the subject Program is unknown to Plaintiff and is within the scope of knowledge of the propounding party himself.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 3:

Identify all documents that support your contention that David Alvarado was in control of the business premises located at 224 E. Yosemite Avenue, Madera, California 93638 where the fight program was allegedly exhibited on Saturday, May 23, 2009.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 3:

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall

produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

Without waiving the aforementioned, Plaintiff refers the propounding party Defendant to the document attached hereto and made part hereof as Plaintiff's Exhibit 1.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 4:

Identify all witnesses that support your contention that David Alvarado was in control of the business premises located at 224 E. Yosemite Avenue, Madera, California 93638 where the fight program was allegedly exhibited on Saturday, May 23, 2009.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 4:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 1.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 5:

Identify all facts that support your contention that David Alvarado was in control of the business premises located at 224 E. Yosemite Avenue, Madera, California 93638 where the fight program was allegedly exhibited on Saturday, May 23, 2009.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 5:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 3.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 6:

Identify all documents that support your contention that Linda Alvarado was in control of the business premises located at 224 E. Yosemite Avenue, Madera, California 93638 where the fight program was allegedly exhibited on Saturday, May 23, 2009.

///

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 6:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 3.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 7:

Identify all witnesses that support your contention that Linda Alvarado was in control of the business promises located at 224 E. Yosemite Avenue, Madera, California 93638 where the fight program was allegedly exhibited on Saturday, May 23, 2009.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 7:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 1.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 8:

Identify all facts that support your contention that Linda Alvarado was in control of the business promises located at 224 E. Yosemite Avenue, Madera, California 93638 where the fight program was allegedly exhibited on Saturday, May 23, 2009.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 8:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 3.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 9:

Identify all facts that support your contention that David Alvarado knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009.

///

///

///

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 9:**

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

Plaintiff further informs the propounding party Defendant that it is unaware of whether or not Defendant "knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009" and that that information is within the scope of knowledge of the propounding party himself.

**DEFENDANT'S SPECIAL INTERROGATORY NO. 10:**

Identify all witnesses that support your contention that David Alvarado knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 10:**

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 9.

**DEFENDANT'S SPECIAL INTERROGATORY NO. 11:**

Identify all documents that support your contention that David Alvarado knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 11:**

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 9.

///

///

## DEFENDANT'S SPECIAL INTERROGATORY NO. 12:

Identify all facts that support your contention that Linda Alvarado knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 12:

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

Plaintiff further informs the propounding party Defendant that it is unaware of whether or not Defendant "knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009" and that that information is within the scope of knowledge of the defendant herself.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 13:

Identify all witnesses that support your contention that Linda Alvarado knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 13:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 12.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 14:

Identify all documents that support your contention that Linda Alvarado knew that the subject fight program was going to be displayed prior to the alleged exhibition on Saturday, May 23, 2009.

///

///

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 14:**

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 12.

**DEFENDANT'S SPECIAL INTERROGATORY NO. 15:**

Identify all facts that support your contention in paragraph 7 of your Complaint that "David Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operating at 224 E. Yosemite Avenue, Madera, California 93638."

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 15:**

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 3.

**DEFENDANT'S SPECIAL INTERROGATORY NO. 16:**

Identify all witnesses that support your contention in paragraph 7 of your Complaint that "David Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operating at 224 E. Yosemite Avenue, Madera, California 93638."

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 16:**

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 1.

**DEFENDANT'S SPECIAL INTERROGATORY NO. 17:**

Identify all documents that support your contention in paragraph 7 of your Complaint that "David Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial

establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operating at 224 E. Yosemite Avenue, Madera, California 93638."

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 17:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 3.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 18:

Identify all facts that support your contention in paragraph 8 of your Complaint that "Linda Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operating at 224 E. Yosemite Avenue, Madera, California 93638."

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 18:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 3.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 19:

Identify all witnesses that support your contention in paragraph 8 of your Complaint that "Linda Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operating at 224 E. Yosemite Avenue, Madera, California 93638."

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 19:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 1.

///

## DEFENDANT'S SPECIAL INTERROGATORY NO. 20:

Identify all documents that support your contention in paragraph 8 of your Complaint that "Linda Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operating at 224 E. Yosemite Avenue, Madera, California 93638,"

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 20:

Plaintiff refers the propounding party Defendant to Plaintiff's Response to Defendant's Interrogatory No. 3.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 21:

Do you contend that David Alvarado was personally physically present at Patron's Sports Bar on Saturday, May 23, 2009 during the alleged exhibition of the subject fight program?

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 21:

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

Plaintiff further informs the propounding party Defendant that it is unaware of whether or not Defendant was "personally physically present at Patron's Sports Bar on Saturday, May 23, 2009 during the alleged exhibition" and that that information is within the scope of knowledge of the propounding party himself.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 22:

Do you contend that Linda Alvarado was personally physically present at Patron's Sports Bar on Saturday, May 23, 2009 during the alleged exhibition of the subject fight program?

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 22:

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

Plaintiff further informs the propounding party Defendant that it is unaware of whether or not Defendant was "personally physically present at Patron's Sports Bar on Saturday, May 23, 2009 during the alleged exhibition" and that that information is within the scope of knowledge of the defendant herself.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 23:

Identify all pay-per-view fight programs you contend were illegally displayed at Patron's Sports Bar at any time.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 23:

Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida of Saturday, May 23, 2009.

## DEFENDANT'S SPECIAL INTERROGATORY NO. 24:

How many television screens do you contend the subject fight program displayed on at Patron's Sports Bar during this subject incident?

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 24:

Plaintiff informs the propounding party Defendant that discovery in this action has only recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall produce all such non-privileged and/or otherwise non-objectionable documentation, including such documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as practically possible.

1 Upon review of the investigative of Ted Norwood, Plaintiff informs the propounding party
2 Defendant that the investigator makes note of witnessing eight (8) television sets, with the last
3 television set on the right of the bar displaying the subject fight Program, however, whether or not the
4 subject Program was displayed on any of the other televisions during the duration of the subject
5 Program is unknown to Plaintiff and is within the scope of knowledge of the propounding party
6 himself.

7

8 **DEFENDANT'S SPECIAL INTERROGATORY NO. 25:**

9 Identify all facts that support your contention that David Alvarado or Linda Alvarado had
10 any involvement whatsoever in the decision to display the subject fight program at Patron's Sports
11 Bar on May 23, 2009.

12

13 **PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORY NO. 25:**

14 Plaintiff informs the propounding party Defendant that discovery in this action has only
recently commenced and that Plaintiff's investigation in this matter is not yet completed. Plaintiff shall
15 produce all such non-privileged and/or otherwise non-objectionable documentation, including such
16 documentation, if any, generated by expert witnesses responsive to this interrogatory and as soon as
17 practically possible.

18 Without waiving the aforementioned, Plaintiff refers the propounding party Defendant to the
19 documents attached hereto and made part hereof as Plaintiff's Exhibits 1 and 2.

20

21

22

23

24 Dated: 2/24/11

25 LAW OFFICES OF THOMAS P. RILEY, P.C.
By: Thomas P. Riley, Esquire
26 Attorneys for Plaintiff
JOE HAND PROMOTIONS, INC.
27

28 ///

PLAINTIFF'S RESPONSES TO DEFENDANT'S
SPECIAL INTERROGATORIES
CASE NO. 1:10-cv-00907-LJO-JLT

## VERIFICATION

**COMMONWEALTH OF PENNSYLVANIA** )
) ss.
**COUNTY OF BUCKS** )

I, JOE HAND, JR., declare as follows:

I am the President of the Plaintiff in the subject action and make this Verification on its behalf. I have read the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT'S SPECIAL INTERROGATORIES**, and know the contents thereof. The matters stated in the foregoing are true of my own knowledge except as to those matters, which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on February ____, 2011, in Feasterville, Pennsylvania.

JOE HAND, JR.

PLAINTIFF'S RESPONSES TO DEFENDANT'S
SPECIAL INTERROGATORIES
CASE NO. 1:10-cv-00907-LJO-JLT

Page 18

# EXHIBIT 1



California Department of Alcoholic Beverage Control
*License Query System Summary*
*as of 5/25/2009*

## License Information

License Number: 432985      Status: ACTIVE

Primary Owner: ALVARADO DAVID

ABC Office of Application: FRESNO

## Business Name

Doing Business As: FRANKIES

## Business Address

Address: 224 E YOSEMITE AVE    Census Tract: 0008

City: MADERA    County: MADERA

State: CA    Zip Code: 93638

## Licensee Information

Licensee: ALVARADO DAVID

Licensee: ALVARADO LINDA

## License Types

1) License Type: 48 - ON-SALE GENERAL PUBLIC PREMISES

     License Type Status: ACTIVE

     Status Date: 29-DEC-2005      Term: Month(s)

     Original Issue Date: 29-DEC-2005      Expiration Date: 30-NOV-2009

     Master: Y      Duplicate: 0      Fee Code: P40

     License Type was Transferred On:      From: 184726

2) License Type: 30 - TEMPORARY PERMIT

     License Type Status: ISSUE

     Status Date: 01-DEC-2005      Term: Month(s)

     Original Issue Date:      Expiration Date:

     Master: Y      Duplicate: 1      Fee Code: NA

## Current Disciplinary Action

. . . No Active Disciplinary Action found . . .

## Disciplinary History

Reg. Number: 08070108

     1) Section Violated: 24200(a&b)

     2) Section Violated: 23402

     Proceeding Status: COMPLETE    Decision: SUSPENDED

     Suspension Days: 15 Stayed Days 15   POIC/Fine:

     Suspension Start Date:   Suspension End Date:

## Hold Information

. . . No Active Holds found . . .

## Escrow

Escrow: TOWN & COUNTRY ESCROW 6760 N WEST AVE STE 102 FRESNO,CA 93711

# EXHIBIT 2

STATE OF: CA
COUNTY OF: FRESNO

### AFFIDAVIT

I, the undersigned, being duly sworn according to law, disposes and says, that on May 23rd 2009, at about 9:45pm I entered Frankie's Bar located at 224 E Yosemite Ave Madera, CA 93638. The telephone number for the bar is 559-674-8894.

I paid no cover charge to enter the establishment. I ordered one drink costing three dollars from a Hispanic female waitress who looked about 30 years old. She seemed about 5'4 and 130 pounds had black hair and was wearing a Los Angeles Lakers jersey.

I observed eight television sets, which are described as: All were about 24 inches big. Five television sets were on the back wall of the bar and three were behind the bar above the beverages. The last television set on the right of the bar, was the one I recorded the video off of. There was very loud music coming from the speakers which I believe had to have been hooked up to the Jukebox next to them.

At the time I was inside the above establishment, I observed the introduction of Sean Sherk and. Frankie Edgar. Sherk was in white and black trunks with red and yellow lettering. Edgar was wearing white trunks with black trim.

I also observed the following distinguishing items inside the establishment: The entrance was on the east side of the building. The bar itself was along the south wall and the pool table was in the northwest corner of the building. The dance floor was in the north half of the building and somewhat separate from the bar area. From south to north there was the entrance, then tables and chairs along the front side of the bar, then the pool table and then the room with the dance floor behind the pool table.

This establishment rates fair.

At the time I was in the establishment, I took three head counts. The head counts were 25, 25 and 27. I was not able to view the fire code occupancy but estimate that that the capacity was 60 people.

I left the establishment at roughly 10:15pm.

I also observed the following license plates in the parking lot:

1) 5MTE545     2) 5CZA942     3) 5TYS229     4) 5UBJ946
5) 7T89879     6) 2ZEU443

Date: 5-27-09

Ted Norwood

Red Rock Investigations
PO Box 800982
Santa Clarita CA 91380
Phone : 661-993-1261
Fax: 661-244-2856
CA PI Lisc# 24653

## NOTARY

State of California

County of Los Angeles

Subscribed and sworn to, before me on this        day of May, 2009 Ted Norwood
proved to me on the basis of satisfactory evidence to be the person who
appeared before me.

Notary Public        See attached
California Acknowledgement

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___Fresno___

On _05-27-2009_ before me, _Matthew Dylan Robinson Notary Public_
        Date                          Here Insert Name and Title of the Officer

personally appeared ___Teel Norwood___
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                  Signature of Notary Public

MATTHEW DYLAN ROBINSON
Commission # 1694403
Notary Public - California
Fresno County
My Comm. Expires Sep 18, 2010

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: ___Affidavit___

Document Date: ___05-27-2009___          Number of Pages: ___2___

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827





Exhibit B

Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel: 626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
JOE HAND PROMOTIONS, INC.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| JOE HAND PROMOTIONS. INC., | Case No.: 1:10-cv-00907-LJO-JLT |
|---|---|
| Plaintiff, | PLAINTIFF'S RESPONSES TO DEFENDANT'S REQUEST FOR ADMISSIONS |
| v. | |
| DAVID ALVARADO, LINDA ALVARADO, ADOLFO ORDAZ, JR., SUSANA GARCIA AND ANDRES GARCIA, individually and d/b/a FANKIE'S BAR a/k/a PATRON'S SPORTS BAR, | |
| Defendants. | |

PROPOUNDING PARTY: Defendant DAVID ALVARADO

RESPONDING PARTY: Plaintiff JOE HAND PROMOTIONS, INC.

SET NUMBER: ONE (1)

REQUEST FOR ADMISSION NO. 1:

Admit that from April of 2009 through November of 2009 Adolfo Ordaz, Jr., Susana Garcia. and Andres Garcia were leasing the premises located at 224 E. Yosemite Avenue, Madera, California 93638 from David Alvarado.

PLAINTIFF'S RESPONSES TO DEFENDANT'S
REQUEST FOR ADMISSIONS
Case No.: 1:10-cv-00907-LJO-JLT
Page 1

Admit that the payroll checks issued in May of 2009 for employees working at the business located at 224 E. Yosemite Avenue, Madera, California 93638 had the name Patron's Sports Bar on them.

## RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Deny. The subject matter to which propounding party requests an admission for is within the scope of knowledge of the propounding party.

## REQUEST FOR ADMISSION NO. 20:

Admit that the only basis for your contention in paragraph 8 of your Complaint that "Linda Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operated at 224 E. Yosemite Avenue, Madera, California 93638" is that her name appeared on the liquor license.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20:

Admit.

## REQUEST FOR ADMISSION NO. 21:

Admit that the only basis for your contention in paragraph 7 of your Complaint that "David Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operated at 224 E. Yosemite Avenue, Madera, California 93638" is that his name appeared on the liquor license.

## RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Admit.

///

## REQUEST FOR ADMISSION NO. 22:

Admit that there are no witnesses to support your contention in paragraph 8 of your Complaint that "Linda Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operated at 224 E. Yosemite Avenue, Madera, California 93638" on May 23, 2009.

## RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Deny.

## REQUEST FOR ADMISSION NO. 23:

Admit that there are no witnesses to support your contention in paragraph 7 of your Complaint that "David Alvarado is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Frankie's Bar a/k/a Patron's Sports Bar operated at 224 E. Yosemite Avenue, Madera, California 93638" on May 23, 2009.

## RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Deny.

Dated: 2/24/11

LAW OFFICES OF THOMAS P. RILEY, P.C.
By: Thomas P. Riley, Esquire
Attorneys for Plaintiff
JOE HAND PROMOTIONS. INC.

///
///
///

## VERIFICATION

**COMMONWEALTH OF PENNSYLVANIA**                    )
                                                                                      )     ss.
**COUNTY OF BUCKS**                                                )

I, **JOE HAND, JR.**, declare as follows:

I am the President of the Plaintiff in the subject action and make this Verification on its behalf. I have read the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANT'S REQUEST FOR ADMISSIONS**, and know the contents thereof. The matters stated in the foregoing are true of my own knowledge except as to those matters, which are stated on information and belief, and as to those matters. I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on February ____, 2011, in Feasterville, Pennsylvania.


_____
**JOE HAND, JR.**

///
///
///
///
///
///

Exhibit C

# Patron's Sports Bar

224 E.   Yosemite Ave  Madera, Ca. 93638 (559) 674.8894

May 4, 2009

To Whom It May Concern,

Patron's Sports Bar formally known as Frankies located in Madera, Ca.93638 has been undergoing the process of updating its current payroll system. Lorena Cooper is currently employed with Patron's Sports Bar and is working approximately 30 -40 hours per bi-weekly at a pay rate of 9 dollars.  Unfortunately since our payroll system is not fully updated yet we can not print out an earnings report for Ms. Cooper. If there is any more information needed please feel free to contact me at (559) 674-8894

Adolfo Ordaz/ Owner

Exhibit D

REQUESTED BY AND WHEN FILED, I TO:

ADOLfo JR ORfAZ

address: 1216 WRENWOOD WAY

City, State, Zip: MADERA CA 93638   Daytime phone # (557) 718-0539

This space is reserved for County Clerk

FILED
MADERA COUNTY

2009 APR -8 AM 11: 34

REBECCA MARTINE.
COUNTY CLERK

The filing is at:
☐ First Filing (Publication Required)
☒ Re-file with changes (Publication Required)
☐ Re-file after 40 days expiration date ( Publication Required)
☐ Re-file within 40 days of expiration date with no changes from the previous filing
CURRENT / PREVIOUS FILE NUMBER (REQUIRED for a re-file or renewal):   2-0090164

## FICTITIOUS BUSINESS NAME STATEMENT
The following person(s) is (are) doing business as:

Fictitious Business Name(s)

A   PATRONS Sports BAR   B

C   D

Address of Principal Place of Business  (PO Box may be used as your mailing address only)      City      State      Zip Code

224 W. YOSEMITE AVE   MADERA CA 93638

| Full Name of Registrant | Residence Street Address | City | State | Zip Co |
|---|---|---|---|---|
| A  ADOLG JR ORDAZ | 1216 WRENWOOD WAY | MADERA | PA | 936. |
| B  SUSANA GARCIA | 1653 ADANCA WAY | MADERA | CA | 936. |
| C  ANDREZ GARCIA | 1657 ADANCA WAY | MADERA | CA | 936. |
| D  | | | | |

This Business is conducted by: (check one only)
☐ an individual          ☐ husband and wife          ☐ trust          ☐ co-partners
☒ general partnership      ☐ limited partnership       ☐ limited liability partnership   ☐ corporation   ☐ joint venture
☐ an unincorporated association-other than a partnership    ☐ limited liability company
☐ state/local registered domestic partners

The registrant commenced to transact business under the fictitious business name or names listed above on ___N/A___ (insert N/A if you haven't started to transact business)

I declare that all information in this statement is true and correct. (A registrant who declares as true information which he or she knows to be false is guilty of a crime.)

Signature of Registrant

Print name of person signing   ADOLfo JR ORDAZ
If corporation, also print corporate title of officer.  If LLC, also print title of member.

This statement was filed with the County Clerk of Madera County on date indicated by file stamp above

NOTICE – In accordance with subdivision (a) of Section 17920, a fictitious business name statement generally expires at the end of five years from the date on which it was filed in the office of the County Clerk, except as provided in subdivision (b) of Section 17920, where it expires 40 days after any change in the facts set forth in the statement pursuant to Section 17913 other than a change in the residence address of a registered owner. A new fictitious business name statement must be filed before the expiration.

The filing of this statement does not of itself authorize the use in this state of a fictitious business name in violation of the rights of another under federal, state, or common law (see Section 14411 et seq., Business and Professions Code).

I hereby certify that the foregoing is a correct copy of the original statement on file in my office.

Rebecca Martinez
Madera County Clerk-Recorder

By

File Number: 2069 - 0294

Exhibit E

EXTRA
INFO

**WELLS FARGO BANK**

MADERA OFFICE                    201 E YOSEMITE AVE                MADERA, CA 93638                    1002

DATE 5/29/09                                                        11-4288/1210

PAY TO THE ORDER OF  Victor Gonzalez                              $ 118.20

One hundred eighteen _____ 20/100                           DOLLARS

SUSANA GARCIA
DBA PATRONS SPORTS BAR
PAYROLL ACCOUNT
1633 ADANAC WAY
MADERA      CA 93638-1737

�semifoot 12104288 1: 70384504 12" 1002

Exhibit F



**WELLS FARGO**

PO Box 6600
Hagerstown Md  21740

# MERCHANT CARD PROCESSING STATEMENT

## LOCATION RECAP

67118 1 AT 0.357
067118/000001/41681/A300031PIN002/67158/0011/436775 246 01 000000
PATRONS SPORTS BAR
SUSANA GARCIA
224 E YOSEMITE AVE
MADERA CA  93638-3626

| | |
|---|---|
| Page 1 of 7 | **THIS IS NOT A BILL** |
| Statement Period | 10/01/09 - 10/31/09 |
| Merchant Number | 226408695998 |
| Customer Service | 1-800-451-5817 |

Opended
His ACC



**WELLS FARGO**

Emma Perez
Business Specialist
Hablo Español

MAC A0000-013
207 E Yosemite Ave
Madera, CA 93638
559 661-0436 / 559 675-1798 Fax
800 269-3557 24 Hr Business Customer Service
800 869-3557 24 Hr Customer Service
emma.o.perez@wellsfargo.com

| | |
|---|---|
| otal Amount Submitted | $686.00 |
| hird Party Transactions | 0.00 |
| Adjustments | -$66.00 |
| Interchange Charges | -$0.73 |
| Service Charges | -$10.71 |
| Fees | -$41.94 |
| Chargebacks/Reversals | 0.00 |
| **Total Amount Processed** | **$566.62** |

Page 5
Page 5
Page 6

---

# IMPORTANT INFORMATION ABOUT YOUR ACCOUNT

USING A POS (Point of Sale) TERMINAL TO PROCESS CARD TRANSACTIONS! Find out what your business MUST do maintain compliance with the Payment Card Industry Data Security Standard (PCI DSS) and help prevent a data security breach. Simply read the latest issue of Merchant Intelligence to learn more about: - The Top 5 PCI requirements for dial-u merchants - Tips for IP based or wireless terminal merchants - Validating your PCI compliance Visit:
www.wellsfargo.com/biz/merchantintelligence4

IMPORTANT NOTICE ABOUT THE UNLAWFUL INTERNET GAMBLING ENFORCEMENT ACT (UIGEA): Effective Dece 1, 2009, you are prohibited under the Unlawful Gambling Enforcement Act ("UIGEA") from processing any "restricted transactions" (as defined in UIGEA) through any account or other relationship between you and Wells Fargo Merchant( Services, L.L.C. or its affiliate Wells Fargo Bank, N.A. In the event we identify a suspected restricted transaction, we may block or otherwise prevent or prohibit such transaction, we may close the Account or and the relationship, and we may at any other remedies available to us under this Agreement or otherwise.

1200 MONTEGO WAY-BLDG C, WALNUT CREEK, CA 94598

**MERCHANT CARD-PROCESSING STATEMENT**   LOCATION RECAP

| Merchant Number | 226408695998 |
|---|---|
| Customer Service | 1-800-451-5817 |

Page 5 of 7

| Statement Period | 10/01/09 - 10/31/09 |
|---|---|

## SERVICE CHARGES

| Date | Description | | Total |
|---|---|---|---|
| | | | **Total** |
| 10/30/09 | DEBIT/ATM CARD TRANSACTION FEE   1 TRANSACTIONS AT   .250000 | | -$0.25 |
| 10/30/09 | MASTERCARD SALES DISCOUNT .019000 DISC RATE TIMES   $32.00 | | -$0.61 |
| 10/30/09 | VISA SALES DISCOUNT .019000 DISC RATE TIMES   $16.00 | | -$0.30 |
| 10/30/09 | MASTERCARD DEBIT SALES DISC .016500 DISC RATE TIMES   $137.00 | | -$2.26 |
| 10/30/09 | VISA DEBIT SALES DISCOUNT .016500 DISC RATE TIMES   $442.00 | | -$7.29 |
| Total | | | **-$10.71** |

## FEES

| Date | Description | Total |
|---|---|---|
| | | **Total** |
| 10/30/09 | MASTERCARD 950 AUTH FEE   10 TRANSACTIONS AT   .200000 | -$2.00 |
| 10/30/09 | VISA 950 AUTH FEE   27 TRANSACTIONS AT   .200000 | -$5.40 |
| 10/30/09 | MONTHLY SERVICE CHARGE | -$10.00 |
| 10/30/09 | ACH REJECT FEE   1 TRANSACTIONS AT  10.000000 | -$10.00 |
| 10/30/09 | ACCOUNT MINIMUM FEE   25.00 MINIMUM LEVEL LESS   10.46 | -$14.54 |
| Total | | **-$41.94** |

## CHARGEBACKS/REVERSALS

| Date | Reference No. | Description | Amount |
|---|---|---|---|
| | | No Chargebacks/Reversals for this statement period | 0.00 |
| Total | | | **0.00** |

067118/000001/41891/A300031PIN002/67158/0011/436779 245 0

Exhibit G

**Q97 FM**

617 West Tulare Avenue
Visalia CA 93277
Phone: 559-627-9710

## Contract Confirmation

Revision: Orig
Station: KSEQ

Contract:   18682   Entry date:10/27/09
Acnt Name: PATRON'S SPORTS BAR
Air Dates: 10/29/09-10/31/09

Salesperson: Myrna Hurtado           #: 38
Income Type: Local Direct
Rep Office: No Office
A/R Description: PATRONS SPORTS BAR
Estimate #: 18682
Special Handling: 20% Direct
Co-op: No   Type of Billing Month: Calendar

PATRON'S SPORTS BAR
224 E. YOSEMITE
MADERA, CA  93638

| Line | Type of Sale | Len | Extra Billing Description |
|------|--------------|-----|---------------------------|
| A | Reg Commercial | 60 | |
| B | Reg Commercial | 60 | |
| C | Reg Commercial | 15 | |

| Date Range | Dayparting | Len | Rate | Mon | Tue | Wed | Thu | Fri | Sat | Sun | WeeksOn | WkUnit | TotlUnit | TotalAmt |
|------------|-----------|-----|------|-----|-----|-----|-----|-----|-----|-----|---------|--------|----------|----------|
| A 10/29/09-10/29/09 | 6:00a-12:00a | 60s | $750.00/spt | | | | 1 | - | - | | All | 1 | 1 | $750.00 |
| B 10/29/09-10/31/09 | 6:00a-12:00a | 60s | $0.00/spt | | | | 5 | 10 | 8 | | All | 23 | 23 | 0.02 |
| C 10/25/09-10/31/09 | 6:00a-12:00a | 15s | $0.00/spt | | | | 2 | 7 | 4 | | All | 13 | 13 | 0.00 |
| | | | Totals: | | | | 8 | 17 | 12 | | 1Week | 37 | 37 | $750.00 |

CONTRACT TOTAL:                 $750.00     37 Units

| Month Units | Total |
|-------------|-------|
| Oct09  37 | $750.00 |

This station does not discriminate in the sale of advertising time, and will accept no advertising which is placed with an intent to discriminate on the basis of race, gender or ethnicity. Advertiser hereby certifies that it is not buying broadcasting air time under this advertising sales contract for a discriminatory purpose, including but not limited to publishing not to place advertising on prospective stations on the basis of race, gender, national origin, or ancestry.

**Accepted By**        Client Signature

**Today's Date**

**Accepted By**        Station Signature

**Today's Date**

Wide Orbit Software LLC Los Angeles

Exhibit H

| LABOR COMMISSIONER, STATE OF CALIFORNIA<br>Department of Industrial Relations<br>Division of Labor Standards Enforcement<br>770 E. Shaw Avenue, Ste. 222<br>Fresno, CA 93710<br>Tel: (559) 244-5340   Fax: (559) 248-8415 | For Cou      se Only. |
|---|---|
| Plaintiff:      Yolanda Maria Varela | |
| | Court Number |
| Defendant:      Patrons Sports Bar, a general partnership; Adolfo Ordaz<br>Jr., Susan Garcia, and Andres Garcia, each individually<br>and as general partners of Patrons Sports Bar, a general<br>partnership | |
| State Case Number<br>04 - 46979      WC | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

**DATE: January 11, 2010**          ☐ **CONTINUED TO**

**CITY: 770 E. Shaw Avenue, Ste. 222, Fresno, CA 93710**

2. IT IS ORDERED THAT  **Plaintiff recover from Defendant.**

| $ | 2,266.00 | for wages **(with lawful deductions)** |
|---|---|---|
| $ | 0.00 | Reimbursable business expenses |
| $ | 51.52 | for interest pursuant to Labor Code Section 98.1 |
| $ | 1,755.00 | for additional wages accrued pursuant to Labor Code Section 203 as a penalty *and that same shall not be subject to payroll or other deductions.* |
| $ | 1,755.00 | for recovery on dishonored payroll check |
| $ | 0.00 | other compensation(specify) |
| $ | **5,827.52** | **TOTAL AMOUNT OF AWARD** |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer(See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(b) provides that if the parties seeking review by filing an appeal to the court are unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. **PLEASE TAKE NOTICE** that Labor Code Section 98.2 (b) requires that when an employer files an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall post a bond or undertaking with the court in the amount of the ODA and the employer shall provide written notice to the other parties and the Labor Commissioner of the undertaking. Labor Code Section 98.2 (b) also requires that the bond contain certain other conditions.

\* Madera County Superior Court

209 W. Yosemite
Madera, CA 93637

LABOR COMMISSIONER, STATE OF CALIFORNIA

BY: _____

DATED: January 11, 2010                    Beau Moore                    HEARING OFFICER

BEFORE THE LABOR COMMISSIONER

OF THE STATE OF CALIFORNIA

Yolanda Maria Varela,

                Plaintiff        CASE NO. 04-46979 DM

              V.             ORDER, DECISION OR AWARD
                                    OF THE LABOR COMMISSIONER

Partrons Sports Bar, a general
Partnership; Adolfo Ordaz Jr., Susan
Garcia, and Andres Garcia, each
individually and as general partners of
Partrons Sports Bar, a general
partnership,
              Defendant

## BACKGROUND

Plaintiff filed an initial claim with the Labor Commissioner's office on October 27, 2009.
The complaint raises the following allegations:

1. Regular wages for the period July 6, 2009 to October 17, 2009.

2. Meal Period premium wages for the period July 6, 2009 to October 17, 2009.

3. Interest pursuant to Labor Code Section 98.1.

4. Penalties pursuant to Labor Code Section 203.1.

5. Penalties pursuant to Labor Code Section 203.

A hearing was conducted in Fresno, California on January 11, 2010, before the undersigned
Hearing Officer designated by the Labor Commissioner to hear this matter. Plaintiff, Yolanda
Maria Varela, appeared in pro per. Adolfo Ordaz Jr., Partner, appeared on behalf of Defendant.
Due consideration having been given to the testimony, documentary evidence, and arguments
presented, the Labor Commissioner hereby adopts the following Order, Decision or Award.

1

(Case No. 04-46979 DM)

# FINDINGS OF FACT

Plaintiff was employed by Defendant to perform personal services as a Bartender Supervisor, from March 28, 2009 to October 17, 2009, in the county of Madera, California, under the terms of a written agreement, at the promised rate of compensation of $8.00 per hour from March 28, 2009 to May 4, 2009 and $9.00 per hour from May 5, 2009 to October 17, 2009.

Plaintiff testified Defendant began having financial difficulties and falling behind on payroll in early July 2009. Plaintiff stated she was informed by the store she cashes her payroll checks at the payroll check issued by Defendant July 10, 2009, check number 1021, for $215.18 was returned for non-sufficient funds. Plaintiff further testified she paid the store back the face value of the check, but was never reimbursed for the hours worked by Defendant. Consequently, Plaintiff is claiming 30 days penalties pursuant to Labor Code Section 203.1, for issuance of a non-sufficient funds pay check, at her amended average daily wage of $58.50 for 30 days being $1,755.00.

Defendant admitted he issued a payroll check to Plaintiff that was subsequently returned due to non-sufficient funds, but alleges he re-paid the face value of the check directly to the store where Plaintiff cashed it. Defendant provided no evidence or documentation to support his claim he re-paid the bounced check to any party.

Plaintiff stated in the subsequent months Defendant did not issue any additional check to cover wages. Defendant began paying cash to Plaintiff, but would not pay her wages in full. Defendant would provide $100.00 to $200.00 payments at random intervals in partial payment of wages earned. Plaintiff provided receipts kept by Defendant showing he made cash payments totaling $650.00 to Defendant for the period September 17, 2009 to October 10, 2009, as well as time cards showing the hours she worked. As such, Plaintiff is claiming wages for 252 hours at $9.00 per hour, for the period of July 6, 2009 to October 18, 2009 totaling $2,268.00, less $650.00 previously paid by Defendant, being $1,618.00. Plaintiff testified the hours claimed include the hours represented in the payroll check issued by Defendant that was subsequently returned due to a lack of funds.

Defendant denied any wages are owed Plaintiff. Defendant stated Plaintiff stole the original time cards from his office and submitted falsified time cards in the hearing. Defendant provided no actual evidence or documentation to support this assertion. Further, the one time card Defendant did

2

provide for Plaintiff appears to be the only time card missing from the time cards submitted by Plaintiff as evidence.

Defendant admits he paid Plaintiff by cash. He stated he did not want any wages run through a payroll company as he did not have any workers' compensation insurance and did not want to get caught. Defendant provided no evidence or documentation to support he ever paid any wages to Plaintiff.

Plaintiff testified she was never allowed to take a meal period. Plaintiff further testified Defendant did not have an established meal period policy, schedule meal periods for the employees, or provide any relief so employees could take a meal period. As such, Plaintiff is claiming meal period premium wages for 18 days at $9.00 per day for the period July 7, 2009 to October 18, 2009 being $162.00.

Defendant offered no testimony or evidence regarding meal periods.

Defendant testified Plaintiff has named the wrong legal entity. Defendant stated the bar is called Frankies and owed by David Alvarado and he was just running the bar for Mr. Alvarado

Plaintiff testified Defendant was the owner of the business for the period she is claiming wages are due, and that Defendant would constantly refer to himself as the owner in dealings with others involving the business. Plaintiff provided a letter from Defendant, indicating he is the owner of Patrons Sports Bar.

Defendant stated Patrons Sports Bar never opened, the business is called Frankies. Patrons Sports Bar was a marketing idea only, and was never implemented. I asked Defendant why he filed a fictitious business statement with the county of Madera to operate Patrons Sports Bar as a general partnership with the two other named defendants, provided payment of wages as evidenced by the non-sufficient funds payroll check under the name Patrons Sports Bar, and provided a letter for another employee, submitted as evidence by Plaintiff, indicating he is the owner of Patrons Sports Bar, if he never owned or operated a bar known as Patrons Sports Bar. Defendant stated he never actually purchased the bar from David Alvarado and should not be responsible for any wages or penalties.

None of the agreements between the Defendant and Mr. Alvarado were done in writing. Defendant provided invoices from vendors, some dated almost two years prior to when he supposedly took over the bar, showing the business name as Frankies and the name of David Alvarado.

(Case No. 04-48979 DM)

Plaintiff testified she quit without notice on October 17, 2009 and did not return to demand her wages until after the bar had been purchased by a new owner. Defendant testified he never fired Plaintiff and she never quit. Plaintiff confirmed she once again works in the bar, but only began after it was purchased by new owners.

As Plaintiff is alleging she is owed additional wages, she is claiming waiting time penalties pursuant to Labor Code section 203. The records submitted by Plaintiff show she worked an average shift of 6.56 hours, therefore Plaintiff is claiming waiting time penalties for 30 days at her amended average daily wage of $58.50 per day (6.56 hours at $9.00 per hour) being $1,755.00

## LEGAL ANALYSIS

Defendant's assertion Plaintiff did not name the correct legal entity is without merit. Defendant by his own admission operated the business as an owner, filed a fictitious business statement with the County of Madera to operate Patrons Sports Bar under a general partnership, issued wages payments to Plaintiff with a check for Patrons Sports Bar, and attempted to procure small business loans for the business as a general partnership doing business as Patrons Sports Bar. Much of the evidence Defendant provided to support his position he should not be named in this action are vendor invoices and cannot be considered a reliable indication of the correct legal entity.

Defendant's business is subject to Industrial Welfare Commission Wage order 5-2001 regulating wages, hours and working conditions in the Public Housekeeping Industry.

Section 7 of the order, Records, states as follows: (A) Every employer shall keep accurate information with respect to each employee including the following: (1) Full name, home address, occupation and social security number. (2) Birth date, if under 18 years, and designation as a minor. (3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded. (4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee. (5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request. (6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer. (B) Every employer shall semimonthly or at the time of each payment of wages furnish

4

each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item. (C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request. (D) Clocks shall be provided in all major work areas or within reasonable distance thereto insofar as practicable.

*Hernandez v. Mendoza*, (1988) 199 Cal.App.3d 721, 245, clearly establishes that the testimony of an employee concerning the number of hours worked is sufficient to satisfy the burden of going forward with the evidence. When the employer has kept proper and accurate records, the employee may easily discharge the burden by securing production of those records. When the employer's records are inadequate, inaccurate or nonexistent, a more difficult problem arises. The solution is not to penalize, by denying recovery, because the employee may not be able to prove the precise extent of improperly compensated work. Such a result would place a premium on the employer's failure to conform to the employer's statutory responsibility. It would allow the employer to keep the benefits of the employee's labors without paying due compensation. Accordingly, the employee may be awarded wages even though the result may be only approximate.

In the instant matter, Plaintiff provided her original time cards showing she worked through October 18, 2009. Defendant provided no evidence or documentation to support his assertion Plaintiff falsified the time cards she submitted as evidence. Further, Defendant only submitted one time card for Plaintiff; it coincidentally was the only time card missing from those submitted by Plaintiff. As such, I must conclude the time cards submitted by Plaintiff are valid and as Defendant provided no other evidence, documentation, or testimony representing the hours worked by Plaintiff or payments made to Plaintiff representing wages, finding is made for Plaintiff, based on the evidence and testimony she provided. Consequently, Plaintiff is entitled to recover 295 hours of regular wages at $9.00 per hour being for the period July 6, 2009 to October 18, 2009, totaling $2,655.00 less $650.00 previously paid by Defendant, being $2,005.00

5

1    Section 11, Meal Periods, states in part, as follows: (A) No employer shall employ any

2    person for a work period of more than five (5) hours without a meal period of not less than 30

3    minutes, except that when a work period of not more than six (6) hours will complete the day's

4    work the meal period may be waived by mutual consent of the employer and employee. Unless the

5    employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered

6    an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted

7    only when the nature of the work prevents an employee from being relieved of all duty and when by

8    written agreement between the parties an on-the-job paid meal period is agreed to. The written

9    agreement shall state that the employee may, in writing, revoke the agreement at any time. (B) If an

10   employer fails to provide an employee a meal period in accordance with the applicable provisions

     of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular

     rate of compensation for each work day that the meal period is not provided.

11   Again, applying the principals of *Hernandez V. Mendoza*, based on the testimony and

12   evidence provided by Plaintiff, Plaintiff is entitled to recover Meal Period premium wages for 29

13   days at $9.00 per day, for the period July 6, 2009 to October 18, 2009, being $261.00.

14   Labor Code Section 98.1(c) states as follows: All awards granted pursuant to a

15   hearing under this chapter shall accrue interest on all due and unpaid wages at the same rate

     as prescribed by subdivision (b) of Section 3289 of the Civil Code. The interest shall accrue

16   until the wages are paid from the date that the wages were due and payable as provided in

17   Part 1 (commencing with Section 200) of Division 2.  Plaintiff is due $51.52 as interest

18   pursuant to Labor Code Section 98.1(c).

19   Labor Code Section 203.1 provides: If an employer pays an employee in the regular course

20   of employment or in accordance with Section 201, 201.5, 201.7, or 202 any wages or fringe

21   benefits, or both, by check, draft or voucher, which check, draft or voucher is subsequently refused

     payment because the employer or maker has no account with the bank, institution, or person on

22   which the instrument is drawn, or has insufficient funds in the account upon which the instrument is

23   drawn at the time of its presentation, so long as the same is presented within 30 days of receipt by

24   the employee of the check, draft or voucher, those wages or fringe benefits, or both, shall continue

25   as a penalty from the due date thereof at the same rate until paid or until an action therefore is

26   commenced. However, those wages and fringe benefits shall not continue for more than 30 days and

27   this penalty shall not apply if the employer can establish to the satisfaction of the Labor

6

Commissioner or an appropriate court of law that the violation of this section was unintentional. This penalty also shall not apply in any case in which an employee recovers the service charge authorized by Section 1719 of the Civil Code in an action brought by the employee thereunder.

In the instant matter, Defendant issued Check 1021 on July 10, 2009, which was returned due to insufficient funds. The check has not been replaced or negotiated. Therefore, Plaintiff is due 30 days of wages as a penalty at the daily rate of $58.5 being $1,755.00. It should be noted, although Defendant testified he replaced the check with the store Plaintiff cashed her check, Defendant provided no evidence to support his assertion.

Labor Code Section 202 provides in relevant part that if an employee quits his or her employment, all earned wages shall become due and payable not later than 72 hours thereafter. Section 202 further provides as follows: "Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address." Labor Code Section 208 states in relevant part that, "every employee who quits shall be paid at the office or agency of the employer in the county where the employee has been performing labor." Labor Code Section 203 provides an employee's wages shall continue as a penalty for up to 30 days if an employer willfully fails to pay in accordance with Section 202.

In the case of a quit, the element of "willfulness" required by Section 203 cannot be established unless the employee has personally returned to the employer's place of business to ask for his wages after the requisite 72 hours has elapsed. However, as Defendant had knowledge of the wages owed Plaintiff for her work and had not provided payment of those wages for several months, requiring Plaintiff to return to demand her wages would constitute a futile act. As such, Plaintiff is owed waiting time penalties pursuant to Labor Code Section 203 for 30 days, at her amended average daily wage of $58.50 totaling $1,755.00.

7

## CONCLUSIONS

For all the foregoing reasons, IT IS HEREBY ORDERED Defendant, Partrons Sports Bar, a general Partnership; Adolfo Ordaz Jr., Susan Garcia, and Andres Garcia, each individually and as general partners of Partrons Sports Bar, a general partnership, pay Plaintiff, Yolanda Maria Varela, as follows:

1. $2,005.00 in regular wages.

2. $261.00 in Meal Period premium wages.

3. $51.52 in interest pursuant to Labor Code Section 98.1.

4. $1,755.00 in penalties pursuant to Labor Code Section 203.1.

5. $1,755.00 in penalties pursuant to Labor Code Section 203.

Dated: January 11, 2010                    Beau Moore, Hearing Officer

(Case No. 04-46979 DM)

LABOR COMMISSIONER
Department of Industrial Relations
Division of Labor Standards Enforcement
770 E. Shaw Avenue, Ste. 222
Fresno, CA  93710
Tel: (559) 244-5340   Fax: (559) 248-8415

| Plaintiff: | Yolanda Maria Varela |
|---|---|
| Defendant: | Patrons Sports Bar, a general partnership; Adolfo Ordaz Jr., Susan Garcia, and Andres Garcia, each individually and as general partners of Patrons Sports Bar, a general partnership |

| State Case Number 04 - 46979   WC | NOTICE OF PAYMENT DUE |
|---|---|

You have been served a copy of the Labor Commissioner's Order, Decision or Award.

If the full amount of the sums set forth in the Order, Decision or Award is received by this office within ten (10) days of the date the Order, Decision or Award was served upon you, no judgment will be entered in this matter.

Payment must be made by certified check, cashier's check or money order (no other tender will be accepted) made payable to the Plaintiff named in the Order, Decision or Award, and addressed to the Office of the Labor Commissioner at the address shown above.

- All unsatisfied judgments will be referred to the Franchise Tax Board for collection pursuant to the provisions of Section 19290 of the Revenue and Taxation Code.

DATED:  January 11, 2010

*Wesley Clingman*

Wesley Clingman   Deputy Labor Commissioner
559-244-5359

## SEPARATE STATEMENT OF UNCONTROVERTED FACTS

### (pursuant to Local Rule 260)

1.    At the time of the events giving rise to this lawsuit the subject premises were not in the control of defendants David Alvarado and Linda Alvarado.

    [Declaration of David Alvarado ¶3-8; Declaration of Linda Alvarado ¶3-8; Declaration of Victor Gonzalez ¶3-6; Declaration of Armando Gonzalez ¶3-5; Declaration of Brandie Flores ¶4-6; Declaration of Attorney Matthew A. Paré ¶7-12, and Exhibits C-H attached thereto.]

2.    Defendants David Alvarado and Linda Alvrado were previously and subsequently the owners of the bar located at 224 E. Yosemite Avenue, Madera, California 93638, known as Frankie's Bar. They owned and operated that bar in the time period before April of 2009, and then again starting towards the end of 2009.

    [Declaration of David Alvarado ¶2-4; Declaration of Linda Alvarado ¶2-4; Declaration of Victor Gonzalez ¶3; Declaration of Armando Gonzalez ¶3.]

3.    From approximately April 1, 2009 through November 2009, the subject premises was being leased to Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia, who were running their own business known as Patron's Sports Bar. During that time in question, Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were exclusively in control of the subject premises and assumed all responsibilities for the actions that took place therein. At that time the establishment was known as Patron's Sports Bar and the business of David Alvrado and Linda Alvarado, Frankie's Bar, did not exist.

    [Declaration of David Alvarado ¶3-8; Declaration of Linda Alvarado ¶3-8; Declaration of Victor Gonzalez ¶3-6; Declaration of Armando Gonzalez ¶3-5; Declaration of Brandie Flores ¶4-6; Declaration of Attorney Matthew A. Paré ¶7-12, and Exhibits C-H attached thereto.]

4.    After Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia failed to pay rent for multiple months, defendants David Alvarado and Linda Alvarado resumed control of the subject premises,

1   once again operating it as Frankie's Bar.  David Alvarado and Linda Alvarado did not regain

2   control over the establishment until well after the events giving rise to this underlying lawsuit.

3            [Declaration of David Alvarado ¶4; Declaration of Linda Alvarado ¶4.]

4   5.       During the time of the alleged events giving rise to this lawsuit, specifically in May of

5   2009, Adolfo Ordaz, Jr., Susana Garcia, and Andres Garcia were exclusively in control of the

6   subject premises.

7            [Declaration of David Alvarado ¶4; Declaration of Linda Alvarado ¶4; Declaration of

8            Victor Gonzalez ¶3-6; Declaration of Armando Gonzalez ¶3-5; Declaration of Brandie

9            Flores ¶3-6; Declaration of Attorney Matthew A. Paré ¶7-12, and Exhibits C-H attached

10           thereto.]

11  6.       If any television programs were shown at the subject location during the time that Adolfo

12  Ordaz, Jr., Susana Garcia, and Andres Garcia were operating the business as Patron's Sports Bar,

13  that was done completely independently of David Alvarado and Linda Alvarado, and was not with

14  their permission or even knowledge.  As it relates specifically to the alleged May 23, 2009

15  program, if that was exhibited as alleged, it was done by Adolfo Ordaz, Jr., Susana Garcia, and

16  Andres Garcia, and without David Alvarado and Linda Alvarado's knowledge, consent, or

17  permission.  Quite simply, moving defendants were not in any way involved with what was taking

18  place at 224 E. Yosemite Avenue, Madera, California 93638 on May 23, 2009 whatsoever.  On or

19  about May 23, 2009, David Alvarado and Linda Alvarado were not informed of what was taking

20  place at Patron's Sports Bar.  They had no employees working at the subject premises, and were

21  not the owners of the business at that time.

22           [Declaration of David Alvarado ¶5-8; Declaration of Linda Alvarado ¶5-8; Declaration of

23           Victor Gonzalez ¶3-6; Declaration of Armando Gonzalez ¶3-5; Declaration of Brandie

24           Flores ¶3-6; Declaration of Attorney Matthew A. Paré ¶7-12, and Exhibits C-H attached

25           thereto.]

26  7.       With regard to the subject television program that was allegedly displayed unlawfully on

27  May 23, 2009, which forms the basis of this lawsuit, David Alvarado and Linda Alvarado had no

1   prior knowledge that was going to be displayed on the television there, nor did they have any

2   control over what was exhibited on the televisions at Patron's Sports Bar.

3          [Declaration of David Alvarado ¶8; Declaration of Linda Alvarado ¶8; Declaration of

4          Victor Gonzalez ¶3-6; Declaration of Armando Gonzalez ¶3-5; Declaration of Brandie

5          Flores ¶3-6; Declaration of Attorney Matthew A. Paré ¶7-12, and Exhibits C-H attached

6          thereto.]

7   8.     Defendants David Alvarado and Linda Alvarado did not derive any benefit from the

8   subject television program being displayed. They had no stake in the business of Patron's Sports

9   Bar whatsoever. David Alvarado and Linda Alvarado did not hold any supervisory position with

10  any control in the business of Patron's Sports Bar (or any position whatsoever for that matter) or

11  any financial stake in the business at all.

12         [Declaration of David Alvarado ¶8; Declaration of Linda Alvarado ¶8; Declaration of

13         Victor Gonzalez ¶3-6; Declaration of Armando Gonzalez ¶3-5; Declaration of Brandie

14         Flores ¶3-6; Declaration of Attorney Matthew A. Paré ¶7-12, and Exhibits C-H attached

15         thereto.]

16  9.     Defendants David Alvarado and Linda Alvarado did not play any part in any violations of

17  law that may have occurred arising out of a television program that was allegedly displayed and

18  forms the basis of this lawsuit. David Alvarado and Linda Alvarado did not authorize any

19  violations that may have occurred, they did not have any right or ability to supervise what was

20  going on at Patron's Sports Bar, and had no financial interest in any misconduct that occurred.

21         [Declaration of David Alvarado ¶2-9; Declaration of Linda Alvarado ¶2-9; Declaration of

22         Victor Gonzalez ¶3-6; Declaration of Armando Gonzalez ¶3-5; Declaration of Brandie

23         Flores ¶3-6; Declaration of Attorney Matthew A. Paré ¶7-12, and Exhibits C-H attached

24         thereto.]

25  10.    Plaintiff Joe Hand Promotions, Inc. has no evidence that defendants David Alvarado and

26  Linda Alvarado were in control of the subject premises at the time of the events giving rise to this

27  lawsuit, that they knew the subject television program was going to be displayed, or that they were

28

1    in any way in charge of the premises, or had any involvement with the activities giving rise to this

2    lawsuit whatsoever.

3         [Declaration of Attorney Matthew A. Paré ¶4, and Exhibit A attached thereto.]

4    11.     The only basis for plaintiff's contention that defendants David Alvarado and Linda

5    Alvarado are responsible for the alleged television signal piracy is the liquor license that has their

6    names on it.

7         [Declaration of Attorney Matthew A. Paré ¶5, and Exhibit B attached thereto.]

8    12.     Plaintiff Joe Hand Promotions, Inc. has no evidence of the means by which the alleged

9    television signal piracy occurred, namely whether it was by obtaining a satellite signal or a cable

10    signal.

11         [Declaration of Attorney Matthew A. Paré ¶4, 13, and specifically plaintiff's evidence

12         contained within Exhibit A attached to the Declaration of Attorney Matthew A. Paré.]

13    13.     Plaintiff Joe Hand Promotions, Inc. has no evidence to suggest that defendants David

14    Alvarado and Linda Alvarado were involved with the wrongful disposition of plaintiff's property

15    to support the cause of action for conversion.

16         [Declaration of Attorney Matthew A. Paré ¶4, 13, and specifically plaintiff's evidence

17         contained within Exhibit A attached to the Declaration of Attorney Matthew A. Paré.]

18    14.     Plaintiff Joe Hand Promotions, Inc. has no evidence indicating that defendants David

19    Alvarado and Linda Alvarado wrongfully obtained or retained any money as a result of the alleged

20    television signal piracy in this case that would support any form of restitutionary award.

21         [Declaration of Attorney Matthew A. Paré ¶13; Declaration of David Alvarado ¶8;

22         Declaration of Linda Alvarado ¶8.]

23    DATED: April 11, 2011                  LAW OFFICE OF MATTHEW PARE

24

                                By:     /s/ Matthew A. Paré

25

26                                 Matthew A. Paré, Esquire
                                   Counsel for Defendants David

27                                 Alvarado and Linda Alvarado

1
Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE**
333 H Street, Suite 5059
2
Chula Vista, CA 91910
Phone: (619) 869-4999
3
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com
4

5

## CERTIFICATE OF SERVICE

6

7
      I hereby certify that on April 11, 2011, I electronically filed the foregoing with the Clerk of

8
the Court using the ECF System which sent notification of such filing to the following:

9
Thomas P. Riley, Esq., State Bar No.: 194706
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
10
First Library Square
1114 Fremont Avenue
11
South Pasadena, CA 91030-3227
Phone: (626) 799-9797
12
Fax: (626) 799-9795
e-mail: TPRLAW@att.net
13

John Robert Waterman, Esq., State Bar No.: 215378
14
**BORTON PETRINI, LLP**
2444 Main Street, Ste. 125
15
Fresno, CA 93721
Phone: (559) 268-0117
16
Fax: (559) 237-7995
e-mail: jwaterman@bortonpetrini.com, jwatermanesq@hotmail.com
17

Matthew A. Paré, Esq., State Bar No.: 258434
18
**LAW OFFICE OF MATTHEW PARE**
333 H Street, Suite 5059
19
Chula Vista, CA 91910
Phone: (619) 869-4999
20
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com
21

           By:   /s/ Matthew A. Paré
22

                  Matthew A. Paré, Esquire
23

24

25

26

27

28