IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | ) Case No.: 1:10-cv-00907 LJO JLT |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS<br>) DENYING THE MOTION FOR DEFAULT |
| v. | ) JUDGMENT BY DEFENDANTS DAVID<br>) ALVARADO AND LINDA ALVARADO |
| DAVID ALVARADO, LINDA ALVARADO,<br>ADOLFO ORDAZ JR., SUSANA GARCIA<br>and ANDRES GARCIA, INDIVIDUALLY and<br>d/b/a FRANKIES BAR a/k/a PATRON'S<br>SPORTS BAR, | ) (Doc. 32) |
| Defendants. | ) |

David Alvarado and Linda Alvarado, individually and doing business as Frankie's Bar ("the Alvarados") seek the entry of default judgment against Adolofo Ordaz, Jr., Susana Garcia, and Andres Garcia, individually and doing business as Patron's Sports Bar. (Doc. 32). The Court reviewed the motion and supporting documents and determined that this matter is suitable for decision without oral argument pursuant to Local Rule 230(g). For the following reasons, Court recommends the motion for default judgment be **DENIED**.

**I.   Procedural History**

On May 20, 2010, Plaintiff Joe Hand Promotions ("Plaintiff") filed its complaint against David Alvarado and Linda Alvarado, Adolofo Ordaz, Jr., Susana Garcia, and Andres Garcia, individually and doing business as Frankie's Bar, also known as Patron's Sports Bar (collectively,

1

"Defendants"). (Doc. 1). Plaintiff asserts it possessed the exclusive rights to the nationwide commercial distribution of the "Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida" ("the Program"), televised on May 23, 2009. *Id.* at 3. Plaintiff alleges Defendants intercepted and broadcast the Program without purchasing a sublicense from Plaintiff, resulting in conversion, and violations of 47 U.S.C. § 605, 47 U.S.C. § 533, and the California Business and Professions Code § 17200, *et seq*. *Id.* at 4-7, 15.

The Alvarados filed their answer to Plaintiff's complaint on August 5, 2010. (Doc. 10). On September 1, 2010, Adolofo Ordaz, Jr., Susana Garcia, and Andres Garcia filed their answer and cross-claim against the Alvarados, seeking full indemnity, or in the alternative partial indemnity, and declaratory relief. (Doc. 11). On September 20, 2010, the Alvarados filed an answer to the cross-claim, and asserted claims against Adolofo Ordaz, Jr., Susana Garcia, and Andres Garcia ("Ordaz/Garcia Group"), seeking full indemnity, or in the alternative, partial indemnity. (Doc. 15). In addition, the Alvarados raised the following claims against the Ordaz/Garcia Group: negligent misrepresentation, unfair business practices (Cal. Bus. & Prof. Code § 17200), negligence, fraud and intentional deceit (Cal. Civ. Code §§1572, 1710), breach of the implied covenant of good faith and fair dealing, and breach of contract. *Id.* at 8-18.

The Ordaz/Garcia Group failed to file a responsive pleading to the cross-claim within the time prescribed by the Federal Rules of Civil Procedure. Therefore, pursuant to Fed.R.Civ.P. 55(a), the Clerk of the Court issued default against Adolofo Ordaz, Jr., Susana Garcia, and Andres Garcia on November 15, 2010.[1] The Alvaradros filed their motion for default judgment on February 17, 2011 (Doc. 32).

On March 11, 2011, the Court directed the Alvarados to file supplemental briefing to (1) address whether default judgment should be entered at this time given that the Ordaz/Garcia Group has answered Plaintiff's complaint and (2) explain why the damage amount claimed is not

---

[1] Originally, default was entered on November 10, 2010. (Doc. 24). However, this was amended on November 15, 2010. (Doc. 15).

2

speculative and why damages should be awarded at this time despite the posture of the case. (Doc. 33). The Alvarados filed their supplemental brief on March 16, 2011.[2] (Doc. 34)

## II. Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern applications to the Court for issuance of default judgment. Where a default has been entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed.R.Civ.P. 55(a)-(b). After the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). In addition, granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1980 (9th Cir. 1980). The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

## III. The Alvarado's Factual Allegations

The Alvarados assert that they leased premises to the Ordaz/Garcia Group, who operated a business called Patron's Sports Bar from approximately April 1, 2009 to November 2009. (Doc. 15 at 6). They allege that the Ordaz/Garcia Group "were exclusively in control of the subject premises and assumed all responsibilities for the actions that took place therein." *Id.* However, after the

---

[2] Unfortunately, the supplemental brief provided little elucidation of the issues.

1  Ordaz/Garcia Group failed to pay rent, the Alvarados resumed control of the premises and began
2  operating Frankie's Bar once again. *Id.* at 7.
3      According to the Alvarados, if television programs were shown during the time the
4  Ordaz/Garcia Group operated Patron's Sports Bar, broadcasts were "done completely independently
5  of [the Alvarados]," without their permission or knowledge. (Doc. 15 at 7). However, though the
6  business was no longer operated by the Alvarados, their names remained on the liquor license. (Doc.
7  32 at 7; Decl. of Paré, Exh. D).
8  **IV.  Application of *Eitel* Factors**
9      Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh
10 against granting the Alvarados' motion for default judgment at this time.
11     A.  Prejudice to the Alvarados
12     The Alvarados have no other alternative by which to recover damages suffered as a result of
13 actions by the Ordaz/Garcia Group. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *J & J Sports*
14 *Productions v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010).
15 However, as set forth below, the Alvarados have not stated a claim upon which relief may be
16 granted. Therefore, this factor does not weigh against entry of default judgment.
17     B.  Merits of Plaintiff's claims and sufficiency of the complaint
18     Given the kinship of these factors, the Court will consider the merits of the Alvarados'
19 substantive claims and the sufficiency of the complaint together. *See J & J Sports Productions v.*
20 *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit
21 has suggested that, when combined, these factors require a plaintiff to "state a claim on which the
22 plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175, citing *Kloepping v. Fireman's Fund*,
23 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996).
24     *Full Indemnity and partial indemnity*
25     Generally, an action for indemnity accrues when payment has been made upon the underlying
26 claim. *Valley Circle Estates v. VTN Consol.*, 33 Cal.3d 604, 611, 189 Cal.Rptr. 871, 659 P.2d 1160
27 (1983) ("The indemnity action . . . accrues at the time the tort defendant pays a judgment or
28

4

settlement as to which he is entitled to indemnity."). Here, the Alvarados have not paid damages on the underlying claims. Therefore, any claims for full indemnity and partial indemnity are premature.

Moreover, contrary to the Alvarados' assertion, defendants are entitled to indemnification for claims arising under 47 U.S.C. § 553 and § 605. A right to indemnification for a defendant held liable under a federal statute arises, "(1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law." *Doherty v. Wireless Broadcasting Systems*, 151 F.3d 1129, 1130-31 (9th Cir. 1998), *cert. denied* 528 U.S. 813 (1999), citing *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981). The Ninth Circuit determined,

> The explicit languages of Sections 553 and 605 do not prove any right to indemnification or contribution. There is no indication in the legislative history that Congress intended to grant violators of Section 553 or Section 605 a right to indemnification. . . . The remedial provisions in both Sections 553 and 605 take into consideration the degree of the violator's culpability and provide for reduced damages in those instances where the violator was unaware of the violation. There is no indication in the structure of the remedial provisions that Congress intended a violator to have a right to indemnity.

Doherty, 151 F.3d at 1131. Further, the Ninth Circuit determined it was not proper for the Court to recognize a federal common law right to indemnification. *Id.* Therefore, the Alvarados cannot state a claim for indemnification for the alleged violations of § 553 and § 605.

*Fraud and intentional deceit*

The Alvarados contend the Ordaz/Garcia Group committed fraud and intentional deceit in violation of the California Civil Code. Under California law, the Alvarados must show the following to establish fraud: "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* Cal. Civ. Code § 1572. The burden to establish fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990), because "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), quoting Fed. R. Civ. P. 9(b).

Here, the Alvarados assert the Ordaz/Garcia Group represented "that they intended to run a lawful business at the subject location called Patron's Sports Bar, including but not limited to their intention to obtain a commercial television account and not unlawfully display television

5

programming for which they did not have a commercial license." (Doc. 15 at 14). The Alvarados state these representations were false, intended to deceive, and made without intent to perform. *Id.* Further, the Alvarados state the Ordaz/Garcia Group made the statements to induce the Alvarados to rely upon their statements, and reliance was justified because the Ordaz/Garcia Group "made these representations in the context of what appeared to be a mutually-beneficial business relationship." *Id.* at 14-15. Finally, the Alvarados assert they "incurred significant damages and costs" due to the representations of the Ordaz/Garcia Group by having to defend themselves in the underlying lawsuit for the illegal broadcast of the fight program. *Id.* at 15.

Given these facts, the allegations for fraud have not been plead with specificity sufficient to meet the standards of Rule 9(b), because "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 576 F.3d at 1124, citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1120 (9th Cir. 2003); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2004) (allegations of fraud must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations") (internal quotation marks and citation omitted). The Alvarados fail to allege when or by what means the Ordaz/Garcia Group made the representation that they would run a lawful business or obtain a commercial television account. Therefore, the Alvarados have not established their claim for fraud and intentional deceit.

*Negligent misrepresentation*

To establish negligent misrepresentation, the Alvarados must demonstrate: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damages." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 43, 70 Cal.Rptr.3d 199 (2007). Thus, under California law, "[t]he same elements [from fraud] comprise a cause of action for negligent misrepresentation, except there is not a requirement of intent to induce reliance." *Cadio v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rptr.3d 1 (2004). The same heightened pleading requirement under Rule 9(b) applies to claims of negligent misrepresentation, because the claim is "grounded in fraud."

*Kearns*, 567 F.3d at 1125; *see also Meridian Project Sys., Inc. v. Hardin Constr. Co. LLC*, 404 F.Supp.2d 1214, 1219 (E.D. Cal. 2005) ("It is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement"). Because the Alvarados failed to state with particularity the circumstances surrounding the allegations of fraud, their negligent misrepresentation claim fails also.

*Negligence*

To establish negligence under California law, the Alvarados "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). The Alvarados assert:

> [The Ordaz/Garcia Group] had a duty to exercise reasonable and due care in the operations of that business, including regarding the television programming, as well as a duty to exercise reasonable and due care in the provision of pay-per-view services that it was displaying. More specifically, [the Ordaz/Garcia Group] had duties to obtain a television account that was consistent with the commercial nature of the commercial establishment, and not provide television signals for pay-per-view programs illegally. [The Ordaz/Garcia Group] had duties to comply with all federal statutes regulating exhibiting pay-per-view programs, including but not limited to 47 U.S.C. § 553 and 47 U.S.C. § 605.

(Doc. 15 at 12-13). With these allegations, the Alvarados have not established that the Ordaz/Garcia Group owed a duty *specifically* to the Alvarados. *See John B. v. Superior Court*, 38 Cal.4 th 1177, 1188, 45 Cal.Rptr.3d 316, 137 P.3d 153 (2006) ("To prevail in an action for negligence, the plaintiff must show that the defendant owed a duty *to the plaintiff*") (emphasis added). *Nymark v. Heart Fed. Savings & Loan Ass'n.*, 231 Ca.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991) ("The existence of a duty of care owed by a defendant *to a plaintiff* is a prerequisite to establishing a claim for negligence"). Consequently, the Alvarados have not stated a claim for negligence.

*Breach of contract*

To establish breach of contract under California law, the Alvarados must establish that there was a contract under which they performed or had an excuse for non-performance, and that the Ordaz Garcia group breached the contract, which resulted in damages to the Alvarados. *Wall Street Network, Ltd. v. New York Times, Co.*, 164 Cal.App.4th 171, 178, 80 Cal.Rptr.3d 6 (2008) ("The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom.").

Here, the Alvarados allege they entered into an agreement with the Ordaz/Garcia Group, under which the Ordaz/Garcia Group leased the premises for operation of the business known as Patron's Sports Bar. (Doc. 15 at 17). The Alvarados state that they "performed all conditions, covenants, and promises required on their part" under the terms of the contract. *Id.* Further, the Alvarados allege the Ordaz/Garcia Group breached the contract by "unlawfully exhibiting pay-per-view television programming without the proper commercial basis." *Id.* However, as discussed below, this is a material fact that has been disputed by the Ordaz/Garcia Group in their responsive brief filed in the underlying action. (Doc. 11). Therefore, the Court declines to assume the truth of this allegation, and the Alvarados have not established a breach of contract by the Ordaz/Garcia Group.[3]

*Breach of the implied covenant of good faith and fair dealing*

A cause of action for breach of the implied covenant of good faith and fair dealing flows from the existence of a contract, and prohibits either party to the contract from doing anything that would "injure the right of the other to receive the benefits of the agreement." *Tillbury Constructors, Inc. v. State Comp. Ins. Fund*, 137 Cal.App.4th 466, 474, 40 Cal.Rptr.3d 392 (2006). To state a claim, the party must show:

> [T]he conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (Ct. App. 1990). Notably, the Ninth Circuit has determined "no cause of action for the tortuous breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Federal Ins. Co.*, 307

---

[3] The Alvarados assert also that the Ordaz/Garcia Group breached the contract by "failing to pay the agreed-upon rent." (Doc. 15 at 17). However, this claim does not arise from the same transaction or occurrence as the underlying claims. Under the Federal Rules of Civil Procedure, claims must be related and based upon the same percipient event. *See* Fed. R. Civ. P. 18(a). Therefore, the Court may not consider the alleged failure to pay rent by the Ordaz/Garcia Group.

F.3d 944, 955 (9th Cir. 2002), quoting *Mitsui Mfrs. Bank v. Superior Court*, 212 Cal.App.3d 726, 730 (1989), *accord. Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 692-93 (1988).

In this case, the parties engaged in an transaction with equal bargaining strength. No circumstances have been established indicating the presence of a fiduciary relationship between the Alvarados and the Ordaz/Garcia Group when entering into the contract. Therefore, the Alvarados have not established a right to damages for breach of the implied covenant. *See Mitsui*, 212 Cal.App3d at 731 (holding where two parties of equal bargaining strength engage in an ordinary arms-length transaction, the plaintiff is unable to state a claim for tortious breach of the implied covenant and ordinary contract damages are an appropriate remedy).

*Violation of Cal. Bus. & Prof. Code § 17200*

Under §17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Therefore, there are three prongs under which a claim may be established under §17200. *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong . . . is a separate and distinct theory of liability"). Further, a claim under § 17200 must rest on a violation of another law. *Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992). Here, the Alvarados claim the Ordaz/Garcia Group "engaged in unlawful, unfair, deceptive, and/or fraudulent business practices in violation of California Business & Professions Code § 17200, among other laws and regulations." (Doc. 15 at 10).

1. *Unlawful act or practice*

Actions prohibited by § 17200 include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-39, 33 Cal.Rptr.2d 438 (1994). Thus, the "unlawful" prong requires an underlying violation of law. *Krantz v. BT Visual Images*, 89 Cal.App.4th 164, 178, 107 Cal.Rptr.2d 209 (2001). Here, as detailed above, the Alvarados have not established the Ordaz/Garcia Group

violated underlying laws.[4] Moreover, the Alvarados are unable to rely on the alleged violation of § 605 or § 533 in the underlying action, because the Ordaz/Garcia Group remain to defend.

### 2. *Unfair act or practice*

A claim under the "unfair" prong requires "conduct threatening incipient violation of antitrust laws, or violates the policy or spirit of those laws . . . , or otherwise significantly threatens or harms competition." *Cal-Tech Communications v, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). In this case, the Alvarados have not alleged a violation of antitrust laws. Likewise, they have not shown the actions of the Ordaz/Garcia Group threatened or harmed competition.

### 3. *Fraudulent act or practice*

A "fraudulent" act under § 17200 is "one which is likely to deceive the public," and "may be based on misrepresentations . . . which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1474, 49 Cal.Rptr.3d 227 (2006). Thus, the term "fraudulent" under §17200 "does not refer to the common law tort of fraud," *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638, 645 (Ct. App. 2008), but still requires allegations that the misrepresentation was directly related to injurious conduct, and that the claimant actually relied on the alleged misrepresentation. *In re Tobacco II Cases*, 46 Cal.4th 298, 36-27, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009). Nevertheless, claims based upon the "fraudulent" prong of §17200 remain subject to the heightened pleading requirements of Rule 9(b). *Kearns*, 567 F.3d at 1124-25; *Meridian Project Sys.*, 404 F.Supp.2d at 1219. Because the Alvarados failed to plead the circumstances surrounding fraud with particularity, their claim for fraudulent practices under § 17200 fails as well.

///

---

[4] Notably, claims of negligence or breach of contract may not be relied upon in the determination of "unlawful" acts under §17200. *See In National Rural Telcoms. Coop. v. DIRECTV, Inc.*, 319 F.Supp.2d 1059, 1074 (C.D. Cal. 2003) (breach of contract cannot serve as an unlawful predicate act if independent of any law); *Wang & Wang LLP v. Banco Do Brasil, S.A.*, 2007 U.S. Dist. LEXIS 25813, * at 13 ("a naked claim for breach of contract . . . is an insufficient basis for a § 17200 claim"); *Hartless v. Cloroz Co.*, 2007 U.S. Dist LEXIS 81686, at *16-17 (S.D. Cal. Nov. 2007) (common law claims cannot form the basis for a claim under §17200; *Sterns v. Select Comfort Retail Corp.*, 2010 U.S. Dist. LEXIS 84777, at *54 (N.D. Cal. July 21, 2010) (holding the plaintiff's negligence claim could not constitute "a predicate act" for purposes of §17200).

C.  Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. The Alvarados argue they are exposed to liability up to $110,000 for the violations of 47 U.S.C. §§ 553 and 605, and that the award of default judgment "must be equally sizeable to cover any liabilities that are incurred." (Doc. 32 at 8). Further, the Alvarados argue they are entitled to compensatory damages, attorney's fees, consequential damages, and punitive damages under their claims for relief. (Doc. 34 at 7). Thus, the Alvarados seek damages in the amount of $150,000. (Doc. 32 at 3).

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); *but see Hernandez*, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against entry of default judgment). Regardless, as discussed further below, the Court declines to enter judgment in the amount requested. Therefore, the factor does not weigh against the Alvarados.[5]

D.  Possibility of dispute concerning material facts

The Court also considers the possibility of dispute as to any material facts in the case. Generally, there is little possibility of dispute concerning material facts because (1) based on the

---

[5] On the other hand, despite the opportunity for the Alvarados to explain in supplemental briefing why they are entitled to an award of damages now–given that no award has been made against them–they offered no helpful analysis. For example, apparently to bolster their position, they cite cases demonstrating a $50,000 swing in the amount of damages awarded in other cases but seem to ignore that it is exactly this uncertainty in the amount of the damages awarded that demonstrates the clear speculative nature of their demand.

Moreover, in light of their recently filed motion for summary judgment in which they claim that Plaintiff is not entitled to judgment against them as a matter of law, the Alvarado's claim for a judgment against the Ordaz/Garcia Group for more than $100,000 borders on sanctionable frivolity.

11

entry of default, the Court accepts allegations the complaint as true and (2) defendants have not made any effort to challenge the complaint or otherwise appear in this case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. However, in this case the Ordaz/Garcia Group filed a responsive pleading in the underlying action. Therefore, material facts that have been disputed include whether the Ordaz/Garcia Group set up a lawful television account and whether they broadcast the program alleged by Plaintiff. (*See* Doc. 11). Therefore, this factor weighs against granting default judgment.

### E.   Whether default was due to excusable neglect

Generally, the Court will consider whether a failure to answer is due to excusable neglect. *See Eitel,* 782 F.2d at 1472. Here, the Ordaz/Garcia Group was properly served with the summons and complaint, to which they filed a response. However, the Ordaz/Garcia Group failed to respond to the cross-claim filed by the Alvarados, despite being served with it and with the motion now pending before the court. Given these circumstances, it does not appear that their failure to answer, and the resulting defaults entered by the Clerk of Court, was the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against default judgment.

### F.   Policy disfavoring judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The failure to answer the cross-claim makes a decision on the merits impractical regarding the liability of the Ordaz/Garcia Group to the Alvarados. However, as indicated above, the Ordaz/Garcia Group remains in the cation to defend in the underlying claims and this liability has yet to be determined. Moreover, the Alvarados have not established claims against the Ordaz/Garcia Group. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits weighs against entry of default judgment.

The Supreme Court warned that "absurdity might follow" in instances where a court "can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined

against the others." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872).  The Ninth Circuit has summarized the *Frow* standard as follows: "[W]here a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Investment*, 253 F.3d 520, 532 (9th Cir. 2001), citing *Frow*, 82 U.S. at 554.  In addition, the Ninth Circuit extended the rule beyond jointly liable parties to those who are "similarly situated."[6] *Id.*

When a case involves multiple parties or claims, "[c]onsiderations of fairness and sound administration of justice are also applicable to the entry of default judgment." *Johnson v. Cate*, 2009 U.S. Dist. LEXIS 57942, at * 2 (E.D. Cal. June 23, 2009).  In the supplemental briefing, the Alvarados failed to address how the entry of default judgment here–with the accompanying determination of the damage award–would affect the liability of the Ordaz/Garcia Group on the underlying claims raised by Plaintiff.  Therefore, even if the *Eitel* factors had not weighed as heavily against the Alvarados, it is in the interest of justice to not enter default judgment against defendant the Ordaz/Garcia Group while their liability to Plaintiff remains undetermined. *See SEC v. Loomis*, 2010 U.S. Dist. LEXIS 87021, at *12-13 (E.D. Cal. Aug. 2010) (the Court found just reason for delay in entry of default judgment "given the overlapping nature of the claims as to different defendants").

**IV.  Findings and Recommendation**

Application of the *Eitel* factors weighs against grating default judgment.  The Alvarados have not stated a claim upon which relief can be granted.  In addition, there is the possibility of dispute concerning material facts, including whether the Ordaz/Garcia Group broadcast the program at their establishment.  Accordingly, the Court **RECOMMENDS** that the request for entry of default judgment be **DENIED** without prejudice.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within

---

[6] Though the Alvarados dispute that they were acting jointly with the Ordaz/Garcia group, (Doc. 34 at 4), they ignore that this is *exactly* what Plaintiff alleges that they were doing.  (Doc. 1 at 4, 7, 8, 9, 10)

fourteen days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **April 21, 2011**                                                        /s/ Jennifer L. Thurston
                                                                                                    UNITED STATES MAGISTRATE JUDGE