IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC. | CASE NO. CV F 10-0907 LJO JLT |
|         Plaintiff,<br>  vs. | **SUMMARY JUDGMENT DECISION**<br>(Doc. 35.) |
| DAVID ALVARADO, et al., | |
|         Defendants.<br>_____ / | |

## **INTRODUCTION**

Defendants David Alvarado and Linda Alvarado (collectively the "Alvarados") seek summary judgment on plaintiff Joe Hand Promotions, Inc.'s ("Joe Hand's") cable piracy claims in that the Alvarados did not own, operate or control the bar where Joe Hand's exclusive programming was allegedly intercepted. Joe Hand filed no papers to oppose summary judgment for the Alvarados. This Court considered the Alvarados' summary judgment motion on the record[1] and VACATES the May 16, 2011 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court GRANTS the Alvarados summary judgment.

---

[1] In the absence of Joe Hand's opposition, this Court carefully reviewed and considered the entire record to determine whether the Alvarados' summary judgment motion is well supported. Omission of reference to an argument, document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper. This Court thoroughly reviewed, considered and applied the evidence and matters it deemed admissible, material and appropriate for summary judgment.

1

# BACKGROUND

## Summary

Joe Hand held exclusive closed-circuit distribution rights to *Ultimate Fighting Championship 98: Rashad Evans v. Lyoto Machida* ("telecast"), including under-card bouts, which were telecast nationally on May 23, 2009. Joe Hand claims that the telecast was unlawfully intercepted at Frankie's Bar aka Patron's Sports Bar in Madera. The Alvarados deny liability in that they did not own, operate or control the bar at the time of the telecast. The Alvarados claim that alleged wrongdoing is attributable to defendants Adolfo Ordaz, Jr., Susana Garcia and Andres Garcia (collectively the "Ordaz-Garcias").

## The Alvarados' Declarations

In their declarations, the Alvarados state that:

1. The Alvarados owned and operated Frankie's Bar in Madera prior to April 2009 and again resuming toward the end of 2009;

2. The Ordaz-Garcias leased the bar premises during April 1, 2009 to November 2009 and ran their Patron's Sports Bar business;

3. The Ordaz-Garcias held exclusive control to the bar premises and "assumed all responsibilities for the actions that took place therein," including during May 2009;

4. Frankie's Bar did not exist during the Ordaz-Garcias' lease of the bar premises;

5. The Alvarados resumed control of the bar premises after the Ordaz-Garcias failed to pay rent, and the Alvarados again operated the bar premises as Frankie's Bar;

6. If the telecast was shown at the bar premises, the Ordaz-Garcias did so without the Alvarados' "knowledge, consent or permission";

7. The Alvarados were not "in any way involved with what was taking place" at the bar premises on May 23, 2009;

8. The Alvarados were not informed of what took place at Patron's Sports Bar on May 23, 2009;

9. As of May 23, 2009, the Alvarados neither owned the business nor had employees working at the bar premises;

10. Prior to the Ordaz-Garcias' operation of the bar premises, the Alvarados "always

2

|   |     |                                                                                                                                                              |
|---|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 1 |     | operated a lawful cable television system at the establishment";                                                                                             |
| 2 | 11. | The Alvarados neither had prior knowledge that the telecast would be shown, had control over what was shown on the Patron's Sport Bar's televisions, nor derived benefits from telecast; |
| 5 | 12. | The Alvarados had neither a business nor financial stake in Patron's Sports Bar;                                                                             |
| 6 | 13. | The Alvarados held neither a supervisory position with control in Patron's Sports Bar nor the right or ability to supervise Patron's Sport Bar activities; and |
| 8 | 14. | The Alvarados neither played a part in violations of law regarding the telecast, authorized violations, nor "had a financial interest in any misconduct."    |

**Security Guards' Declarations**

Armando Gonzalez and Victor Gonzalez (collectively "security guards") have worked as security guards at the bar premises since prior to April 2009 to present. In their declarations, the security guards state that:

1. On April 1, 2009, defendant Adolfo Ordaz, Jr. ("Mr. Ordaz") took over the bar premises and began to run Patron's Sports Bar;

2. On May 23, 2009 when the telecast was shown, the Alvarados "had nothing to do with the bar";

3. When the security guards worked for Mr. Ordaz, Mr. Ordaz ran the day-to-day operations, was at the bar all of the time, from opening to closing, and was in charge;

4. In May 2009, Mr. Ordaz paid the security guards, not the Alvarados;

5. Based on Mr. Ordaz' instructions, the security guards during May 2009 never dealt with the Alvarados, who according to Mr. Ordaz, "had nothing to do with the bar";

6. During May 2009, the Alvarados "were never informed about what was going on at the bar" and "had no control of what was taking place" at the bar premises; and

7. The security guards understood that based on Mr. Ordaz' statements that Mr. Ordaz "was the owner of the bar and was intentionally running the establishment independently" of the Alvarados.

In his declaration, Victor Gonzalez notes: "When Adolfo Ordaz, Jr. took over the bar he changed

the television system to some kind of satellite system and also had a 'black box.' Adolfo Ordaz, Jr. specifically told me 'don't tell nobody' about the black box that was routinely used by Adolfo Ordaz, Jr. to obtain various television programs, including sports events."

### **Bartender's Declaration**

Brandie Flores ("Ms. Flores") worked as a bartender at Patron's Sports Bar for three months starting in spring 2009. In her declaration, Ms. Flores states that:

1. Ms. Flores understood that Mr. Ordaz owned the bar;
2. Mr. Ordaz held himself out as "the owner of the establishment" and "often referred to himself as the owner and made clear to all of the employees working there that he was in charge and we were supposed to report to him";
3. The Alvarados were in the bar when Ms. Flores worked there;
4. Ms. Flores lacked knowledge of the Alvarados' involvement in the bar business;
5. As of May 23, 2009, the Alvarados "had nothing to do with the operations of the televisions at the bar" and "the business was being run as Patron's Sports Bar" by Mr. Ordaz;
6. Based on Mr. Ordaz' statements, Ms. Flores understood that in May 2009, Mr. Ordaz owned the bar and intentionally ran it independently of the Alvarados; and
7. The Alvarados "were never informed about what was going on at the bar at that time, and they certainly had no control of what was taking place there."

### **Joe Hand's Discovery Responses**

Joe Hand referenced only a California liquor license in the Alvarados' name to respond to the Alvarados' interrogatories seeking facts, witnesses and documents to support that the Alvarados controlled the bar premises on May 23, 2009. In response to the Alvarados' interrogatories seeking facts, witnesses and documents to support that the Alvarados knew that the telecast would be shown on May 23, 2009, Joe Hand responded that it was unaware whether the Alvarados knew that the telecast would be shown. Joe Hand again referenced the liquor license to respond to interrogatories seeking facts, witnesses and documents to support that the Alvarados owned and/or operated the bar premises and had involvement in the decision to display the telecast. Joe Hand responded to other interrogatories

that it was unaware whether the Alvarados were personally present at Patron's Sports Bar during the telecast.

In responses to requests for admission, Joe Hand admitted that the liquor license is its only basis to support that the Alvarados owned and/or operated Patron's Sports Bar.

The Alvarados note that in response to document requests, Joe Hand produced documents that indicated that the Ordaz-Garcias were in charge of the bar premises and owned Patron's Sports Bar on May 23, 2009. Such documents include:

1. Mr. Ordaz' May 4, 2009 letter on Patron's Sports Bar letterhead to identify the bar premises and to confirm that he is the owner;
2. A fictitious business name statement for Patron's Sports Bar filed with the Madera County Clerk on April 8, 2009, naming the Ordaz-Garcias as registrants and signed by Mr. Ordaz;
3. A May 29, 2009 check payable to Victor Gonzalez on a Wells Fargo Bank account for defendant Susana Garcia dba Patron's Sports Bar;
4. An October 2009 merchant card processing statement in Patron's Sports Bar's name;
5. A contract confirmation between Patron's Sports Bar and a radio station; and
6. A January 11, 2010 California Labor Commissioner decision to address claims against Patron's Sport Bar and the Ordaz-Garcias and which noted:

> Defendant by his own admission operated the business as an owner, filed a fictitious business statement with the County of Madera to operate Patron's Sports Bar under a general partnership, issued wages payments to Plaintiff with a check for Patron's Sports Bar, and attempted to procure small business loans for the business as a general partnership doing business as Patron's Sports Bar.

The Alvarados note that Joe Hand has failed to produce evidence that the Alvarados were involved in "the alleged signal piracy activities and conversion of the television signal" or "wrongfully obtained any money from the alleged television signal piracy." The Alvarados contend that the sole basis of their alleged liability is the liquor license in their names.

/ / /

/ / /

/ / /

**Joe Hand's Claims**

Joe Hand's complaint ("complaint") alleges that the Alvarados and the Ordaz-Garcias unlawfully pirated the telecast to violate the Communications Act of 1934, 47 U.S.C. §§ 605, et seq.,[2] the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §§ 553 et seq.,[3] and the California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code, §§ 17200, et seq. The complaint also alleges a conversion claim under California common law.

The complaint seeks to recover statutory, compensatory and punitive damages as well as attorney fees.

**DISCUSSION**

**Summary Judgment Standards**

The Alvarados seek summary judgment in the absence of evidence of their liability.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

---

[2] 47 U.S.C. § 605, et seq., prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming.

[3] 47 U.S.C. § 553, et seq., prohibits interception or reception of any communication service over a cable system without authorization.

1    On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

   The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

   To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

   "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material.

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

As discussed below, the Alvarados demonstrate that they are entitled to judgment as a matter of law.

**Joe Hand's Federal Communications Claims**

*Statutory Authorities*

47 U.S.C. § 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
>
> . . .
>
> (e)(3)(A) Any person aggrieved by an violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 553 addresses unauthorized reception of cable service and provides in pertinent part:

> (a)(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> . . .
>
> (c)(1) Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. §605(e)(3)(C)(ii) authorizes damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(C)(iii).

47 U.S.C. §553(c)(3)(A)(ii) authorizes statutory damages "of not less than $250 or more than

$10,000 as the court considers just," and 26 U.S.C. §553(c)(3)(B) authorizes damages up to $50,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, "where the court finds the violator was not aware and had no reason to believe his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to sum not less than $100." 47 U.S.C. § 553(c)(3)(C).

### *Individual Liability*

The Alvarados argue they are not individually liable in the absence of evidence that they authorized alleged piracy of the telecast.

"Individual liability under the Cable Act requires that the individual authorize the underlying violations." *J&J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469, 473 (E.D. N.Y. 2009). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F.Supp.2d at 473 (quoting *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir.1997)).

The Alvarados hold Joe Hand to establish that the Alvarados:

1. Had control over the television at the time of the alleged signal piracy;
2. Authorized the violation; and
3. Derived a benefit from the alleged signal piracy.

The Alvarados argue that they were not in control of the television at Patron's Sports Bar at the time of the alleged signal piracy "as they had nothing to do with the business." The Alvarados point to the absence of their knowledge or control of events at Patron's Sports Bar and evidence that they authorized alleged signal piracy. The Alvarados note the absence of benefit to them from alleged signal piracy.

The record is bare that the Alvarados authorized statutory violations to subject them to liability. Nothing suggests that they had a right or ability to intercept the telecast on May 23, 2009 at Patron's Sports Bar. In addition, there is no evidence that the Alvarados derived a benefit from interception of the telecast. As such, the Alvarados are not subject to liability for Joe Hand's federal communications claims.

*Liquor License*

The Alvarados argue that their names on the liquor license for Patron's Sports Bar is insufficient to support their liability under the federal communications claims.

"The owner of a liquor license has the responsibility to see to it that the license is not used in violation of law and as a matter of general law the knowledge and acts of the employee or agent are imputable to the licensee." *Munro v. Alcoholic Beverage etc. Control Appeals Board*, 181 Cal.App.2d 162, 164, 5 Cal. Rptr. 527 (1961).

The Alvarados note that the Ordaz-Garcias were not their employees or agents to subject the Alvarados to liability for the Ordaz-Garcias' actions, especially given that the Alvarados were not involved in Patron's Sports Bar.

The Alvarados' names appearing on the liquor license is insufficient to subject them to liability under Joe Hand's federal communications claims.

*Signal Interception*

The Alvarados point to the absence of evidence that they intercepted the telecast or means by which they could have obtained the telecast's signal. The Alvarados note that in response to their discovery requests, Joe Hand "produced nothing indicating that a satellite signal was stolen specifically." The Alvarados conclude that at most, the evidence reveals that the telecast was shown.

The Alvarados are correct. There is no evidence to suggest that they intercepted the telecast to further doom Joe Hand's federal communications claims against the Alvarados.

**Conversion**

The complaint's conversion claim alleges that by interception of the telecast, the Alvarados "wrongfully converted same for their own use and benefit."

The Alvarados argue that an intangible personal property interest in the telecast's exclusive license is not subject to a conversion claim.

"Conversion is the wrongful exercise of dominion over personal property of another." 5 Witkin, *Summary of California Law*, Torts (10th ed. 2005), § 699, p. 1023. "[C]onversion is a tort that may be committed only with relation to personal property and not real property." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

11

"Courts have traditionally refused to recognize as conversion the unauthorized taking of intangible interests that are not merged with, or reflected in, something tangible." *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1565, 54 Cal.Rptr.2d 468 (1996) (citing *Adkins v. Model Laundry Co.*, 92 Cal.App. 575, 583, 268 P. 939 (1928) (business goodwill); *Olschewski v. Hudson,* 87 Cal.App. 282, 286-288, 262 P. 43 (1927) (competitor's customer route); *Faircloth v. A.L. Williams & Associates,* 206 Ga.App. 764, 426 S.E.2d 601, 604-605 (1992) (unpaid commissions not evidenced by a receipt or certificate); *Matzan v. Eastman Kodak Co.,* 134 A.D.2d 863, 521 N.Y.S.2d 917, 918 (1987) (no protected interest in an idea)).

The Alvarados also argue that Joe Hand lacks evidence to support conversion elements, putting aside the tangibility requirement. The Alvarados contend that the evidence reveals at most that Joe Hand owned the telecast and there is no evidence that the Alvarados disposed of the "property" to cause damages.

"The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Conversion is a strict liability tort." *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1065, 80 Cal.Rptr.2d 704 (1998).

The Alvarados are not subject to a conversion claim in absence of evidence that they wrongfully exercised dominion of the telecast to cause Joe Hand damages. The record reveals that the Alvarados lacked ability to intercept the telecast at Patron's Sports Bar to preclude a conversion claim against them.

### **UCL Violation**

The complaint alleges that unlawful interception of the telecast violated the UCL. The Alvarados note that Joe Hand's UCL remedy is limited to restitution.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair

12

competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any **money or property**, real or personal, which may have been acquired by means of such unfair competition.  (Bold added.)

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

The Alvarados challenge existence of monies acquired by them through unfair competition in connection with the telecast.  The Alvarados are correct.  The record lacks evidence that they obtained money from the telecast to support restitution to Joe Hand.

The complaint's UCL claim seeks attorney fees pursuant to California Code of Civil Procedure section 1021.5, which authorizes an attorney fees award to a successful party "in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . ."  The Alvarados correctly note the absence of a significant benefit to the general public or a large class to entitle them to summary judgment on the attorney fees claim.

## CONCLUSION AND ORDER

For the reasons discussed below, this Court:

1. GRANTS the Alvarados summary judgment;
2. DIRECTS the clerk to enter judgment in favor of defendants David Alvarado and Linda Alvarado and against plaintiff Joe Hand Promotions, Inc. in that there is no just reason to delay to enter such judgment given that Joe Hand's claims against the Alvarados and the Alvarados' alleged liability are clear and distinct from claims against and liability of any other defendant.  *See* F.R.Civ.P. 54(b); and
3. FURTHER DIRECTS the clerk NOT to close this action with continues against the Ordaz-Garcias.

IT IS SO ORDERED.

**Dated:     May 3, 2011                              /s/ Lawrence J. O'Neill**

UNITED STATES DISTRICT JUDGE